JOHN BAUER, Plaintiff v. DOUGLAS AQUATICS, INC. and DOUGLAS AQUATICS CHARLOTTE, LLC, Defendants v. CHARLOTTE SHOTCRETE, INC., Cross-Claim Defendant

No. COA10-47

(Filed 7 September 2010)

**Jurisdiction— personal jurisdiction—sufficient minimum contacts—no due process violation**

The trial court did not err in denying defendant's motion to dismiss an action arising out of a swimming pool construction agreement for lack of personal jurisdiction. Defendant was subject to jurisdiction in North Carolina under N.C.G.S. § 1-75.4 and defendant had sufficient minimum contacts with North Carolina to justify personal jurisdiction. The trial court's findings of fact were supported by competent evidence, which in turn supported its conclusion of law that the court's jurisdiction of this action over defendant did not violate due process.

Appeal by Defendant Douglas Aquatics, Inc. from judgment entered 30 September 2009 by Judge Jesse B. Caldwell in

Mecklenburg County Superior Court. Heard in the Court of Appeals 27 May 2010.

*Thurman, Wilson, Boutwell, & Galvin, P.A., by James P. Galvin, for Plaintiff-Appellee.*

*Teague Campbell Dennis & Gorham, L.L.P., by William A. Bulfer, for Defendant-Appellant Douglas Aquatics, Inc.*

BEASLEY, Judge.

Defendant Douglas Aquatics, Inc. (Appellant) appeals the trial court's order denying its motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the North Carolina Rules of Civil Procedure. Because Appellant raises the sole question of whether the exercise of personal jurisdiction over it by the North Carolina courts comports with due process and we conclude that it does, we affirm.

Appellant, a Virginia corporation performing pool construction services, also franchises several pool management and construction companies located in Virginia and North Carolina. John Bauer (Plaintiff) is a North Carolina resident. This action arises out of a swimming pool construction agreement entered into by Plaintiff and Defendant Douglas Aquatics Charlotte, LLC (DA Charlotte), a franchisee of Appellant residing in North Carolina. Alleging faulty construction, Plaintiff filed a verified complaint on 18 March 2009 against Appellant and DA Charlotte[1] for breach of warranties, breach of contract, negligence, fraud, unfair and deceptive trade practice, and agency. In its answer filed 21 May 2009, Appellant included motions to dismiss for lack of personal jurisdiction and failure to state a claim.

A hearing was held on Appellant's motion to dismiss, during which the trial court considered Plaintiff's verified complaint, Appellant's answer, an affidavit from Appellant's president Thomas G. Crouch, documentary evidence, and arguments of counsel. The trial court denied Appellant's motions to dismiss for lack of personal jurisdiction and for failure to state a claim, concluding: (1) Appellant is subject to jurisdiction in North Carolina under N.C. Gen. Stat. § 1-75.4 (North Carolina's "long-arm" statute); (2) "[Appellant] has sufficient minimum contacts with North Carolina to justify personal jurisdiction"; and (3) "Plaintiff's claims sufficiently state the essential allegations necessary to support the claims asserted." The sole basis for this appeal is the trial court's ruling on the personal jurisdiction issue.

---

1. Defendant DA Charlotte is not a party to this appeal.

BAUER v. DOUGLAS AQUATICS, INC.

[207 N.C. App. 65 (2010)]

Initially, we note that notwithstanding the interlocutory nature of the trial court's order, the denial of Appellant's motion to dismiss on personal jurisdiction grounds is immediately appealable. *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 614, 532 S.E.2d 215, 217 (2000); *see also* N.C. Gen. Stat. § 1- 277(b) (2009) ("Any interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant[.] . . .").

<u>Standard of Review</u>

Our courts engage in a two-step inquiry to resolve whether personal jurisdiction over a non-resident defendant is properly asserted: first, North Carolina's long-arm statute must authorize jurisdiction over the defendant. If so, the court must then determine whether the exercise of jurisdiction is consistent with due process. *Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006); *see also Brown v. Meter*, —— N.C. App. ——, ——, 681 S.E.2d 382, 387 (2009) (noting that " '[w]hen personal jurisdiction is alleged to exist pursuant to the long-arm statute, the [issue] collapses into one inquiry,' " which is the question of minimum contacts).

> The determination of whether jurisdiction is statutorily and constitutionally permissible due to contact with the forum is a question of fact. The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court.

*Replacements, Ltd. v. Midwesterling*, 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999) (internal citations omitted). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Nat'l Util. Review, LLC v. Care Ctrs., Inc.*, —— N.C. App. ——, ——, 683 S.E.2d 460, 463 (2009) (internal quotation marks and citation omitted).

Appellant disputes only the presence of federal due process requirements in challenging the court's exercise of personal jurisdiction and does not address the applicability of North Carolina's long-arm statutory authority. Therefore, we likewise confine our discussion to this issue, and our sole inquiry is whether Plaintiff's assertion of jurisdiction over Appellant comports with due process of law. Accordingly, we must determine whether the trial court's findings of fact are supported by competent evidence, which in turn support its

conclusion of law that our courts' entertainment of this action over Appellant does not violate due process.

Appellant assigns error to several of the trial court's findings of fact in that they are unsupported by competent record evidence. Specifically, Appellant contends that any of the findings based on Plaintiff's verified complaint were erroneous because the complaint was not competent evidence and, thus, the allegations therein were insufficient to support those findings. Appellant argues that the verified complaint was not based on Plaintiff's personal knowledge, such that the facts found by the trial court in reliance thereon consisted of inadmissible hearsay.

The procedural context of the personal jurisdiction challenge in the trial court guides our review of this issue:

> Typically, the parties will present personal jurisdiction issues in one of three procedural postures: (1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.

*Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005). When the parties submit "dueling affidavits" under the third category, the trial court may decide the matter from review of the affidavits, or "the court may direct that the matter be heard wholly or partly on oral testimony or depositions." *Id.* at 694, 611 S.E.2d at 183 (internal quotation marks and citations omitted). In either case, the plaintiff bears the burden of proving, by a preponderance of the evidence, grounds for exercising personal jurisdiction over a defendant. *Adams, Kleemeier, Hagan, Hannah & Fouts, PLLC v. Jacobs*, 158 N.C. App. 376, 378, 581 S.E.2d 798, 801, *rev'd on other grounds*, 357 N.C. 651, 588 S.E.2d 465 (2003). As such, upon a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making out a *prima facie* case that jurisdiction exists. *Wyatt v. Walt Disney World Co.*, 151 N.C. App. 158, 162, 565 S.E.2d 705, 708 (2002).

Appellant correctly notes that when a defendant supplements its motion with affidavits or other supporting evidence, the unverified allegations of a plaintiff's complaint " 'can no longer be taken as true or controlling[.]' " *Id.* at 163, 565 S.E.2d at 708 (quoting *Bruggeman*,

138 N.C. App. 615-16, 532 S.E.2d at 218. In that case, a plaintiff cannot rest on the complaint's allegations, even if they meet the initial burden of proving jurisdiction, "but must respond 'by affidavit or otherwise . . . set[ting] forth specific facts showing that the court has jurisdiction.'" *Id.* However, "[a] verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." *Eluhu v. Rossenhaus*, 159 N.C. App. 355, 359, 583 S.E.2d 707, 711 (2003) (internal quotation marks and citations omitted).

Here, Plaintiff's verified complaint seeks redress from faulty construction of the pool for which he contracted. Plaintiff alleges that he entered into a swimming pool construction agreement with Defendant DA Charlotte, a North Carolina limited liability company. Plaintiff also named Appellant as a defendant on the basis that DA Charlotte made the contract "on its own behalf, and as agent for Douglas [Aquatics], Inc." The allegations in his verified complaint support the assertion that jurisdiction over Appellant is proper by virtue of the services Appellant provides in North Carolina through its agent DA Charlotte. Thus, Plaintiff's verified complaint sets forth specific facts showing jurisdiction in our courts. *See* N.C. Gen. Stat. § 1-75.2(3) (2009) (providing that "acts of the defendant" subjecting it to personal jurisdiction "include[] any person's acts for which the defendant is legally responsible"). The allegations contained therein are therefore sufficient to make out a *prima facie* case of personal jurisdiction. Moreover, our review of the verified complaint confirms that it was based on Plaintiff's personal knowledge and affirmatively shows his competence to testify to the matters asserted.

The verification of the complaint states on its face that "John Bauer . . . is the Plaintiff in the foregoing action; that he has read the foregoing Complaint and knows the contents thereof, and that the same is true of his own knowledge," except for the allegations based on information and belief, which he believes to be true. Plaintiff's agency claim is based on allegations that Appellant represented on its website that DA Charlotte was "part of and an agent for [Appellant]." Plaintiff points to the specific statement appearing on Appellant's website "that [DA Charlotte] is one of five [of Appellant's] locations throughout Virginia and North Carolina and that [Appellant] opened its fifth location in Charlotte, North Carolina in 2005 trading as Douglas Aquatics Charlotte." The verified complaint attests that because Appellant's website corroborated the in-person representations

made by DA Charlotte, in reliance thereon, "entered into a contract with Defendant [DA Charlotte], on its own behalf, and as agent for [Appellant], for the construction of a . . . concrete swimming pool on [his North Carolina] property." Plaintiff alleges that the contract identifies Appellant (and not DA Charlotte, referred to as "Contractor" in the agreement) as the party responsible for the basic construction of the pool. A copy of this construction agreement made between Plaintiff and Defendant DA Charlotte is attached to the verified complaint. Although the swimming pool construction agreement identifies DA Charlotte as "an independent license[e] of Douglas Aquatics, Inc.," section 1 thereof provides that Appellant shall administer the basic construction. Specifically, the construction agreement sets out that "Douglas Aquatics, Inc., shall excavate for the pool" and conduct the necessary installations. Plaintiff is clearly a party to the contract and is competent to attest to the discussions that transpired during negotiations and execution of the agreement.

Plaintiff is likewise competent to offer evidence based on his personal knowledge of the representations made by Appellant on its website as it existed at the times relevant to this action. He identifies www.douglasaquatics.com as Appellant's website, viewed and researched by Plaintiff personally, which "holds out [DA Charlotte] as an arm of [Appellant]." As indicated above, the website named DA Charlotte as one of Appellant's five locations throughout Virginia and North Carolina. Further representations on the website announced that Appellant "has been in business since 1970" and touted its exceptional construction services, prompting Plaintiff to contact DA Charlotte. Appellant's affidavit is devoid of any reference to its website or the contents thereof.

We conclude that Plaintiff's verified complaint was based on his personal knowledge, sets forth facts that would be admissible in evidence, and affirmatively shows he is competent to testify to the matters stated therein; thus, it may be treated as an affidavit and constitutes competent evidence on which the trial court could base its findings of fact, which are further discussed below.

Appellant argues that even if the record evidence is competent to support the trial court's findings, it demonstrates a lack of the requisite contact between the Virginia corporation and either Plaintiff or the state of North Carolina for our courts to exercise personal jurisdiction over Appellant without offending due process. We disagree.

**BAUER v. DOUGLAS AQUATICS, INC.**

[207 N.C. App. 65 (2010)]

To satisfy the due process component of the personal jurisdiction inquiry, there must be sufficient "minimum contacts" between the nonresident defendant and our state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940)). "In each case, there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws[,] . . . [and] [t]his relationship between the defendant and the forum must be such that he should reasonably anticipate being haled into court there." *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986) (internal quotation marks and citations omitted). "Factors for determining existence of minimum contacts include '(1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties.' " *Eluhu*, 159 N.C. App. at 358, 583 S.E.2d at 710 (quoting *Bruggeman*, 138 N.C. App. at 617, 532 S.E.2d at 219).

Two forms of personal jurisdiction have been recognized by the United States Supreme Court: " 'specific jurisdiction,' where the controversy arises out of the defendant's contacts with the forum state, and 'general jurisdiction,' where the controversy is unrelated to the defendant's activities within the forum, but there are 'sufficient contacts' between the forum and the defendant." *Replacements*, 133 N.C. App. at 143, 515 S.E.2d at 49-50 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 411 (1984)).

> Specific jurisdiction exists if the defendant has purposely directed its activities toward the resident of the forum and the cause of action relates to such activities. This inquiry focuses on whether the defendant purposefully availed itself of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws, and jurisdiction may be proper even if the defendant has never set foot in the forum state. General jurisdiction exists where the defendant has continuous and systematic contacts with the forum state, even though those contacts do not relate to the cause of action.

*Wyatt,* 151 N.C. App. at 165, 565 S.E.2d at 710 (internal quotation marks and citation omitted). Although Appellant's brief disputes the presence of both types of jurisdiction and Plaintiff responds accordingly, the record does not support a finding of general jurisdiction. Where this cause of action arises out of Appellant's alleged contacts with North Carolina, we limit our review to a determination of whether specific jurisdiction exists. *See Wells Fargo Bank, N.A. v. Affiliated FM Ins. Co.,* 193 N.C. App. 35, 45, 666 S.E.2d 774, 780 (2008) ("Because plaintiff's contentions regarding [Appellant's] minimum contacts relate to the events giving rise to this cause of action, we need not address whether general jurisdiction exists.").

The trial court made the following contested findings of fact,[2] which we conclude are supported by competent evidence:

> 2. Plaintiff's Verified Complaint alleges proper jurisdiction over [Appellant] by virtue of the services provided in North Carolina through its agent [DA Charlotte].
>
> . . . .
>
> 4. . . . [Appellant's] website . . . describ[ed] [DA Charlotte] as another location of Douglas Aquatics, Inc. in Charlotte to provide pool construction needs in that area.
>
> 5. It reasonably appeared to Plaintiff from the website that the two Defendants were the same entity.
>
> . . . .
>
> 7. Defendant [DA Charlotte], by and through its Manager Gabe Ortiz, represented to Plaintiff that they had been in the pool construction industry for over thirty years as stated on [Appellant's] website.

Appellant did not take issue with the following findings, which are thus binding on appeal:

> 6. [Appellant] advertised through its website that they had been in the pool construction business since 1970 and that they received multiple industry awards for their quality work.
>
> . . . .
>
> 8. Unbeknownst to Plaintiff, Defendant [DA Charlotte] has only been in the pool construction business since 2005.

---

2. Any of the trial court's "findings of fact" which are actually conclusions of law will be treated as such.

BAUER v. DOUGLAS AQUATICS, INC.

[207 N.C. App. 65 (2010)]

9. Defendant [DA Charlotte] represented to Plaintiff that [Appellant] would be responsible for the basic construction of the pool.

10. The construction contract for the pool . . . indicated on its face in Section One . . . that "Douglas Aquatics, Inc., shall excavate for the pool, install steel reinforcing bars, place concrete, install pool piping, fitting, install all filtration and swimming pool equipment, provide and install tile, install concrete coping[,] concrete decking and quarts interior, per specifications and plans" . . . .

. . . .

13. Plaintiff's Complaint alleges that both Defendants knowingly held out [DA Charlotte], through the [Appellant's] website, through representations made by Gabe Ortiz, and the construction contract, as the same entity and with the same experience as [Appellant] in order to induce Plaintiff to sign a contract with Defendants.

14. The affidavit of Thomas Crouch alleges that [Appellant] has no actual control over [DA Charlotte].

15. However, Defendant [DA Charlotte] represented to Plaintiff that [Appellant] and [DA Charlotte] were one in the same entity and Plaintiff reasonably relied on those representations.

Further finding Appellant's affidavit insufficient to "rebut the allegations of apparent agency" and "the allegation that the website of [Appellant] specifically targeted citizens of North Carolina," the trial court concluded: "Defendant [DA Charlotte] had authority, whether apparent or actual, to act as an agent of [Appellant]"; "the website as described in Plaintiff's Complaint specifically targets North Carolina residents"; "[Appellant] solicited within this state for business";[3] and "[Appellant] was to perform service or provide materials in North Carolina."

---

3. Appellant disputes the trial court's finding of fact that "[a]n agreement exists that provides for [Appellant] to be paid Ten Percent (10%) of all pool construction revenue generated in North Carolina by [DA Charlotte]," arguing "[t]here is no evidence of any agreement which provides for [such] payment." Indeed, the franchise agreement between Defendants, which was presented to the trial court at the hearing and is contained in the record, requires DA Charlotte to pay Appellant *five* percent (5%) of revenues generated in the Charlotte metro area from various programs, which include construction services and retail sales from products provided by Appellant for distribution by DA Charlotte. While Appellant's argument is technically correct, the minor discrepancy in the trial court's finding number 12 does not alter our analysis.

BAUER v. DOUGLAS AQUATICS, INC.

[207 N.C. App. 65 (2010)]

Appellant argues that the trial court erred as a matter of law in concluding that it engaged in sufficient minimum contacts with North Carolina that would subject Appellant to jurisdiction in our state. Specifically, Appellant challenges the conclusion that personal jurisdiction over it is justified based on Appellant's "authority, whether apparent or actual, to act as an agent of Douglas Aquatics, Inc." and because Appellant's website "specifically targets North Carolina residents." We agree with thetrial court.

Pursuant to agency principles, "vicarious liability of a franchisor for the acts of its franchisee . . . depends upon the existence of an agency relationship[.]" *Hayman v. Ramada Inn, Inc.*, 86 N.C. App. 274, 277, 357 S.E.2d 394, 397 (1987).

An agency relationship "arises when parties manifest consent that one shall act on behalf of the other and subject to his control." *Miller v. Piedmont Steam Co.*, 137 N.C. App. 520, 524, 528 S.E.2d 923, 926 (2000); *see also Hayman*, 86 N.C. App. at 277, 357 S.E.2d at 397 ("Agency has been defined by this Court as the relationship which arises from 'the manifestation of consent by one person to another that the other shall act *on his behalf and subject to his control*, and consent by the other so to act' "). "Moreover, in establishing the existence of an actual agency relationship, the evidence must show that a principal actually consents to an agent acting on its behalf." *Phillips v. Restaurant Mgmt. of Carolina, L.P.*, 146 N.C. App. 203, 217, 552 S.E.2d 686, 695 (2001). Whereas here, the defendant entities are structured as franchisee and franchisor, an actual agency relationship "is determined by the nature and extent of control and supervision retained and exercised by the franchisor over the methods or details of conducting the day-to-day operation." *Hayman*, 86 N.C. App. at 277, 357 S.E.2d at 397.

However, "an agency relationship may be deemed to exist for purposes of vicarious liability in the absence of an actual agency" under the legal theory "known alternatively as 'apparent agency' or 'agency by estoppel[.]' " *Id.* at 278, 357 S.E.2d at 397.

> Where a person by words or conduct represents or permits it to be represented that another person is his agent, he will be estopped to deny the agency as against third persons who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency existed in fact. The same rule applies to a corporation which holds out or permits a person (or another corporation) to be held out as its agent.

*Id.* at 278-79, 357 S.E.2d at 397-98 (internal quotation marks and citations omitted). However, "[i]n determining for jurisdictional purposes the defendant's legal responsibility for the acts of another, the substantive liability of the defendant to the plaintiff is irrelevant." N.C. Gen. Stat. § 1-75.2(3).

Other courts have held that "[t]he contacts within the forum of a party's agent, partner, or joint venturer may, in appropriate circumstances, be attributed to the party for purposes of establishing jurisdiction." *Nucor Corp. v. Bell*, 482 F. Supp.2d 714, 722 (D.S.C. 2007); *see also Grand Entm't Group v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) ("[A]ctivities of a party's agent may count toward the minimum contacts necessary to support jurisdiction."). This Court, however, has only cursorily addressed agency in the personal jurisdiction context. In *Wyatt v. Walt Disney World Co.*, we held that "[a]ctions of an independent contractor are not attributable to the party hiring it, and thus do not, without more, establish jurisdiction," citing *Miller* for the proposition that "no agency relationship between franchiser and independent contractor/franchisee [was created] where franchiser did not have any control over franchisee's day to day operations." *Wyatt*, 151 N.C. App. at 166, 565 S.E.2d at 710. We stated that "[t]he critical element of an agency relationship is the right of control. . . . Absent proof of the right to control, only an independent contractor relationship is established. The actions of an independent contractor *by themselves* are not sufficient to subject a nonresident corporation to the jurisdiction of a forum." *Id.* (emphasis added) (citations omitted). Still, that case made no distinction between actual and apparent agency, as *Wyatt* appeared to be addressing the absence only of actual agency in concluding that specific personal jurisdiction could not be exercised. Other courts, however, have concluded that "personal jurisdiction may be based on contacts made by authorized agents" under standard agency principles, including apparent agency. *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 534 (E.D. Va. 2009).

> [A]gency principles, including principles of apparent agency . . . are no less applicable even where the issue is personal jurisdiction rather than vicarious liability per se. That is, a number of courts have employed the concept of actual or apparent authority to exercise jurisdiction over a principal, or alternatively, have declined to exercise jurisdiction where a claimed agency relationship is not proven. *See, e.g., Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 493 (5th Cir. 1974) (to sustain burden of establishing personal jurisdiction on

agency theory, plaintiff must present prima facie evidence of existence of agency relationship by proof that agent acted with "either actual or apparent authority") [, *overruled on other grounds by Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 72 L. Ed. 2d 492 1982)]; *see also Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (acts of agent attributable to principal for personal jurisdiction purposes); *Dotzler v. Perot*, 899 F. Supp. 416 (E.D. Mo. 1995) (analyzing personal jurisdiction under agency theory); *Damian Servs. Corp. v. PLC Servs., Inc.*, 763 F. Supp. 369 (N.D. Ill. 1991) (establishing personal jurisdiction over defendant by means of acts of agents in forum held consistent with due process).

*Cowart v. Shelby County Health Care Corp.*, 911 F. Supp. 248, 251 (S.D. Miss. 1996); *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (stating whether a defendant business maintains an agent in forum state is a factor in resolving question of purposeful availment); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 57 (1st Cir. 2002) ("Even if the parties were not joint venturers, they held themselves out to Daynard to be part of a joint venture or other agency relationship and are subject, for personal jurisdiction purposes, to the doctrine of [agency by] estoppel."); *Schimpf v. Gerald, Inc.*, 2 F. Supp. 2d 1150, 1162 n.2 (E.D. Wis. 1998) ("[P]ersonal jurisdiction exists based upon [the defendant's] own solicitation and the doctrine of apparent agency[.]"); *IRA Res. v. Griego*, 221 S.W.3d 592, 596-97 (Tex. 2007) (resolving the specific jurisdiction issue based on whether or not the evidence supported a finding of apparent agency). Where N.C. Gen. Stat. § 1-75.2(3) permits the exercise of jurisdiction over a party who is "legally responsible" for certain acts, even if it did not commit them, we conclude that North Carolina's jurisdiction over Appellant may be premised on either actual or apparent agency.

Initially, we note that none of the trial court's findings demonstrate a sufficient measure of control between franchisor Appellant and franchisee DA Charlotte to support the conclusion that an actual agency relationship exists between the two defendants. Moreover, Appellant's affidavit denies any right to control the methods or details of its frachisee's daily operations, as DA Charlotte "is an independent contractor and licensee of Douglas Aquatics, Inc." We agree that Plaintiff cannot rely on his unverified allegation that *"upon information and belief,* [Appellant] has control over [DA Charlotte's] day-to-day operations and management," where the conclusory statement was

rebutted by Appellant's affidavit and Plaintiff failed to respond with specific facts substantiating his claim. The lack of findings and competent evidence regarding control leads us to conclude that Plaintiff has failed to prove that an actual agency relationship existed between Appellant and DA Charlotte.

While Appellant sufficiently disposes of our consideration of actual agency, it leaves unaddressed the website's creation of apparent agency. In any event, we conclude that the trial court's findings are sufficient to support the conclusion that Appellant held DA Charlotte out as its apparent agent to the citizens of North Carolina through affirmative representations on its website.[4]

The trial court found that Appellant, on its website, described DA Charlotte as one of Douglas Aquatics, Inc.'s locations that provides pool construction needs in the Charlotte, North Carolina area and that Appellant's affidavit rebutted neither the allegations of apparent agency nor that the website of Douglas Aquatics, Inc. specifically targeted North Carolina citizens. Appellant focuses its argument on the franchise agreement that "unequivocally defines the relationship between franchisee [DA Charlotte] and [itself] as independent." Indeed, the franchise agreement specifically prohibits DA Charlotte from representing itself as Appellant's agent or engaging in any activity which would purport to bind the franchisor, and Appellant argues that it is "nonsensical" to "[p]resuppos[e] the existence of [an agency] relationship in the face of uncontroverted evidence to the contrary." Appellant ignores the fact, however, that Plaintiff was never privy to the franchise agreement defining the relationship between Defendants. Instead, Plaintiff had only the words and conduct of Defendants upon which to rely in determining whether to enter the pool construction contract.

It was Appellant's statement on its website, as alleged in Plaintiff's verified complaint and uncontroverted by Appellant's

---

4. Appellant does discuss the website in its brief but only in the context of arguing that the website itself did not constitute the requisite minimum contacts for personal jurisdiction, and not in connection to whether Appellant represented that DA Charlotte was its agent. Because we conclude that jurisdiction over Appellant is proper based on the principle of apparent agency, we need not consider the related, but separate, issue of whether Appellant's website is sufficient in and of itself to establish purposeful availment. *See Havey v. Valentine,* 172 N.C. App. 812, 816, 616 S.E.2d 642, 647 (2005) (adopting the rule promulgated by the Fourth Circuit for determining "whether an Internet website can be the basis of an exercise of personal jurisdiction by a court"). Accordingly, our analysis of Appellant's website is limited to its impact on Plaintiff's understanding of the relationship between the two defendants.

affidavit, that "[DA Charlotte] is one of five [of] Douglas [Aquatics], Inc.'s locations throughout Virginia and North Carolina and that Douglas [Aquatics], Inc. opened its fifth location in Charlotte, North Carolina in 2005 trading as Douglas Aquatics Charlotte" that constituted words or conduct representing or permitting it to be represented that DA Charlotte is Appellant's agent. Where there is no evidence that Appellant did not have knowledge of the information disseminated on its own website, the statements at issue can easily be construed as a manifestation by Appellant to citizens in the Charlotte area that DA Charlotte was its agent. Moreover, it was entirely reasonable for Plaintiff to believe that an agency relationship existed based on the conduct of Appellant as the purported principal. For, Appellant's website held DA Charlotte out as another one of its locations and thereby corroborated the in-person representations made to Appellant by DA Charlotte's manager that his business had been in the pool construction industry for over thirty years. Additionally, even if DA Charlotte acted unilaterally in drafting the contract, the pool construction agreement provided that Appellant shall perform the basic construction. We agree with Appellant that the contract provision, in and of itself, would not have supported a reasonable belief that the Defendants were the same entity. However, Appellant's representations on its website justified Plaintiff's belief in the agency intimated by DA Charlotte, and his reliance thereon in entering the construction contract was consistent with ordinary care and prudence.

Accordingly, we conclude that the elements of apparent agency are met, and Appellant can be considered legally responsible for the acts of its apparent agent, DA Charlotte, for purposes of personal jurisdiction. As such, the acts of DA Charlotte committed on Appellant's behalf during negotiations and execution of the construction contract, which both took place in Charlotte, with Plaintiff North Carolina resident, for services to be provided in this state, clearly constitute minimum contacts with the North Carolina forum. Where Appellant's conduct and connection with North Carolina were such that it should reasonably have anticipated being haled into court in this state and "North Carolina has a 'manifest interest' in providing the plaintiff 'a convenient forum for redressing injuries inflicted by' defendant, an out-of-state merchant[,]" *Baker v. Lanier Marine Liquidators, Inc.*, 187 N.C. App. 711, 716, 654 S.E.2d 41, 45 (2007), maintenance of the suit here does not offend traditional notions of fair play and substantial justice. Therefore, we affirm the trial court's order denying Appellant's motion to dismiss for lack of personal jurisdiction.

Affirmed.

Judges GEER and JACKSON concur.