Mayer v. Goldner, 2025 NCBC 59.

STATE OF NORTH CAROLINA

LINCOLN COUNTY

GABRIEL JUDAH MAYER,
individually and derivatively on
behalf of SHERBROOKE
CORPORATE LTD., and
MATTHEW QUEEN,

        Plaintiffs,

v.

SAMUEL GOLDNER,

        Defendant,

and

SHERBROOKE CORPORATE
LTD.,

        Nominal Defendant.

SAMUEL GOLDNER and
SHERBROOKE CORPORATE LTD.,

        Third-Party
        Plaintiffs,

v.

GABRIEL JUDAH MAYER,
MATTHEW QUEEN, GRAND HOOK
AGENCY, LLC, d/b/a TRICURA
INSURANCE GROUP, BEAU
WALKER, and HELIOS RISK
SOLUTIONS, LLC,

        Third-Party
        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 1258

**ORDER AND OPINION ON
GRAND HOOK AGENCY, LLC'S
MOTION TO DISMISS**

*McGuireWoods LLP, by Elisabeth P. Briand, Zachary L. McCamey,
Brian A. Kahn, and Jessica O'Brien Peretz, for Samuel Goldner and
Sherbrooke Corporate Ltd.*

*Parker Poe Adams & Bernstein LLP, by Scott E. Bayzle and Andrew Tabeling, for Gabriel Judah Mayer, Beau Walker, Helios Risk Solutions, LLC, and Grand Hook Agency, LLC.*

*Parker Poe Adams & Bernstein LLP, by Scott E. Bayzle and Andrew Tabeling, and Cranfill Sumner LLP, by Marshall Wall, for Matthew Queen.*

Conrad, Judge.

1. This case arises from a dispute among the shareholders of Sherbrooke Corporate Ltd. Gabriel Mayer and Matthew Queen, both minority shareholders, began the lawsuit by asserting a mix of direct and derivative claims against Samuel Goldner, the majority shareholder. Goldner and Sherbrooke responded with counterclaims against Mayer and Queen and third-party claims against Grand Hook Agency, LLC, Beau Walker, and Helios Risk Solutions, LLC. Grand Hook now moves to dismiss the claims against it for lack of personal jurisdiction. (*See* ECF No. 53.) The motion is fully briefed, and the Court held a hearing on 17 September 2025.

2. As third-party plaintiffs, Goldner and Sherbrooke bear "the burden of making out a *prima facie* case that jurisdiction exists." *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68 (2010). The record comprises only the unverified third-party complaint and Mayer's affidavit in support of Grand Hook's motion. (*See* Third-party Compl., ECF No. 32; Aff. Mayer, ECF No. 55.) Thus, the Court limits its consideration to the "facts in the affidavit" and those "allegations in the complaint that are not controverted by" the affidavit. *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693–94 (2005).

3. Sherbrooke is a captive insurance corporation organized under North Carolina law. All the other parties reside elsewhere. Goldner and Mayer are from

New York; Queen is from Georgia; Walker is from California; Helios is a Colorado limited liability company; and Grand Hook is a Georgia limited liability company. (*See* Third-party Compl. ¶¶ 2–7; Aff. Mayer ¶ 3.)

4. According to the third-party complaint, while serving as Sherbrooke's officers and managing its day-to-day operations, Mayer and Queen formed Grand Hook to compete against it. The complaint alleges a variety of ways in which Mayer and Queen used their insider positions with Sherbrooke to Grand Hook's advantage. For example, when Goldner solicited potential customers for Sherbrooke, Mayer and Queen approached the same potential customers on Grand Hook's behalf, without Goldner's knowledge. In addition, Mayer, Queen, and Walker allegedly provided Sherbrooke's proprietary software and confidential information to Grand Hook and solicited Sherbrooke's employees to leave and join Grand Hook. (*See* Third-party Compl. ¶¶ 65, 66, 72–74, 76, 77.)

5. Eventually, Goldner got wind of these activities and exercised his majority control of Sherbrooke to remove Mayer and Queen from their positions as officers and directors. Around the same time, Mayer and Queen allegedly contacted the North Carolina Department of Insurance and made false, disparaging, and defamatory remarks about both Goldner and Sherbrooke. As alleged, these defamatory statements caused Sherbrooke extensive reputational damage. Indeed, soon after the statements were made, regulators pushed Sherbrooke to enter into a settlement agreement that compelled it to wind down its operations and required it to obtain

approval before it would again be allowed to do business in North Carolina. (Third-party Compl. ¶¶ 55, 78, 111; *see also* Third-party Compl. ¶ 181.)

6. Based on these allegations, Goldner and Sherbrooke assert claims against Grand Hook for civil conspiracy, unfair or deceptive trade practices under N.C.G.S. § 75-1.1, and tortious interference with contract. All three claims sound in unfair competition. In essence, the third-party complaint aims to hold Grand Hook liable for the acts of its officers and agents (namely, Mayer, Queen, and Walker), including their defamatory statements to state regulators and misappropriation of proprietary assets. By the same token, the complaint faults Grand Hook for inducing Mayer, Queen, and Walker to breach the confidentiality, nonsolicitation, and nondisparagement clauses in their employment agreements with Sherbrooke. Grand Hook contends that it is not subject to personal jurisdiction in North Carolina and, thus, that the claims must be dismissed.

7. Determining whether personal jurisdiction exists is "a two-step inquiry: does any statute grant jurisdiction over the defendant, and would exercising jurisdiction violate due process?" *JCG & Assocs., LLC v. Disaster Am. USA, LLC*, 2019 NCBC LEXIS 112, at *6 (N.C. Super. Ct. Dec. 19, 2019); *see also Beem USA LLLP v. Grax Consulting, LLC*, 373 N.C. 297, 302 (2020). Grand Hook challenges only the second step.

8. Due process requires that a defendant "have certain minimum contacts" with this State "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310,

316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In most cases, including this one, the question is whether the asserted claims arise out of the defendant's conduct within or directed to the forum State. This is called "specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction cannot be based on the "defendant's 'random, fortuitous, or attenuated' contacts with the forum state." *Beem USA*, 373 N.C. at 303 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). Rather, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

9. Citing Mayer's affidavit, Grand Hook denies having any property, offices, employees, customers, or business dealings in North Carolina. (*See* Aff. Mayer ¶¶ 4–11.) That may be true. But the United States Supreme Court has "consistently rejected the notion that an absence of physical contacts [with a forum] can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Even without physically entering a forum, a defendant who expressly aims tortious conduct at the forum, knowing that the brunt of the injury will occur there, should reasonably anticipate being sued in its courts. *See Calder v. Jones*, 465 U.S. 783, 789 (1984).

10. The uncontroverted allegations, which must be taken as true, show that Grand Hook aimed tortious conduct at North Carolina while aware that the effects of its conduct would be felt in the State. Consider, first, the alleged defamation, which

is a predicate tort underlying all three asserted claims. In their capacities as Grand Hook's officers, Mayer and Queen allegedly contacted the North Carolina Department of Insurance to disparage and defame Sherbrooke, prompting regulators to shut down Sherbrooke's operations and bar it from doing business in the State. There is no way to view these disparaging statements—made to a state regulatory authority—as anything other than intentional conduct aimed at North Carolina. And without doubt, the damage to Sherbrooke's reputation with regulators in its home State is an injury felt primarily, perhaps exclusively, here. That alone is sufficient to establish jurisdiction over Grand Hook.

11. The complaint goes on to allege misappropriation of Sherbrooke's proprietary software and confidential information, wrongful solicitation of its employees, and tortious interference with its contracts with employees (which are governed by North Carolina law). There are few details about where much of this conduct occurred. Liberally construed, though, the complaint gives just enough information to support an inference that Sherbrooke felt the brunt of its injuries from these tortious acts at its home in North Carolina. Certainly, no available evidence suggests that it suffered injury elsewhere. *See Islet Scis., Inc. v. Brighthaven Ventures, LLC*, 2017 NCBC LEXIS 17, at *15 (N.C. Super. Ct. Mar. 6, 2017) ("Under *Calder*, courts have exercised specific jurisdiction over defendants accused of tortious interference where the defendants knew that the harm would be suffered in the forum." (collecting cases)).

12. Grand Hook presses two unpersuasive arguments. It begins by insisting that it could not have engaged in unfair competition—and, thus, could not have directed tortious conduct at North Carolina—because competing against a captive insurance company such as Sherbrooke is impossible. That is a merits-related question for discovery, not a jurisdictional bar. To be sure, the law limits what a captive insurance company may do. *See Causey v. Cannon Sur., LLC*, 269 N.C. App. 134, 135 (2020) ("A captive insurance company is an insurance company that is owned by another organization and whose exclusive purpose is to insure risks of the parent organization and affiliated companies." (cleaned up)). But the complaint alleges repeatedly that Grand Hook competes with Sherbrooke, has solicited the same potential customers, and has poached existing customers. (*See, e.g.*, Third-party Compl. ¶¶ 65, 66, 67, 72, 74, 76, 109, 137, 140.) One reasonable inference is that Mayer and Queen sabotaged Sherbrooke, including by defaming it to regulators, so that Grand Hook could later scoop up neglected customers. The Court cannot say that these allegations are implausible or that a competitive motive is out of the question.

13. Separately, in a footnote, Grand Hook maintains that the actions of Mayer and Queen cannot be attributed to it. Not so. "A corporation can act only through its agents," *Blanton v. Moses H. Cone Mem'l Hosp., Inc.*, 319 N.C. 372, 375 (1987), and its contacts with a forum "can be manifested only by activities carried on in its behalf by those who are authorized to act for it," *Int'l Shoe*, 326 U.S. at 316. The complaint

adequately alleges not only that Mayer and Queen are Grand Hook's agents but also that they engaged in tortious conduct aimed at this State on its behalf.

14.     In sum, it would not offend due process to exercise jurisdiction over Grand Hook in these circumstances.  If what the complaint says is true, Grand Hook's "intentional, and allegedly tortious, actions were expressly aimed at" North Carolina, and it knew that any injury would be felt here.  *Calder*, 465 U.S. at 789.  The Court therefore **DENIES** the motion to dismiss.  *See, e.g.*, *Howard v. IOMAXIS, LLC*, 2024 NCBC LEXIS 150, at *25 (N.C. Super. Ct. Nov. 27, 2024) (exercising jurisdiction based on allegations of intentional conduct aimed at North Carolina); *JCG & Assocs.*, 2019 NCBC LEXIS 112, at *7–11 (same).


        **SO ORDERED**, this the 2nd day of October, 2025.


                                    /s/ Adam M. Conrad
                                    Adam M. Conrad
                                    Special Superior Court Judge
                                     for Complex Business Cases