JKH Cap., LLC v. Tanglewood Owners, LLC, 2026 NCBC 22.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

JKH CAPITAL, LLC and
DALECREST PO, LLC,

        Plaintiffs,

v.

TANGLEWOOD OWNERS, LLC;
ADDISON PARTNERS; and BRIAN
SCHNEIDER,

        Defendants.

TANGLEWOOD OWNERS, LLC,

        Counterclaim-Plaintiff,

v.

JKH CAPITAL, LLC; DALECREST
PO, LLC; DALECREST HOLDINGS,
LLC; JEREMIAH HANCOCK;
RESHMA TAMRAKAR;
PRABUDHDA DAHAL; MATT
WHITNEY; and SHAWN FULLER,

        Counterclaim-Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV027771-590

**ORDER AND OPINION
ON ADDISON PARTNERS'
AMENDED MOTION TO DISMISS**

1. This is an action for fraud. In 2024, Plaintiffs JKH Capital, LLC and Dalecrest PO, LLC (together, "JKH") agreed to buy an apartment complex in Charlotte, North Carolina. They now allege that the seller, Defendant Tanglewood Owners, LLC, and its affiliate, Defendant Addison Partners, painted a false, rosy picture of the property's financial health.

2. At the outset, Addison Partners moved to dismiss all claims against it, arguing that it is not subject to personal jurisdiction in North Carolina. The Court

then gave the parties a short period to conduct jurisdictional discovery. That period is now complete, and Addison Partners has amended and restated its motion to dismiss for lack of personal jurisdiction. (ECF No. 63.) For the following reasons, the Court **DENIES** the motion.

> *McGuireWoods LLP, by Zachary McCamey, and Cleveland Krist PLLC, by Maria De Lourdes Ortiz, Austin Krist, Ibituroko-Emi Lawson, and Timothy Alan Cleveland, for Plaintiffs JKH Capital, LLC and Dalecrest PO, LLC and Counterclaim Defendants Dalecrest Holdings, LLC, Jeremiah Hancock, Reshma Tamrakar, Prabudhda Dahal, Matt Whitney, and Shawn Fuller.*

> *Ellis & Winters LLP, by Joseph Hammond and Jacob Stewart, for Defendants Tanglewood Owners, LLC, Addison Partners, and Brian Schneider.*

Conrad, Judge.

## I.
## DISCUSSION

3.  When a defendant challenges personal jurisdiction, "the plaintiff has the initial burden of establishing *prima facie* that jurisdiction is proper." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615 (2000); *see also Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68 (2010). Here, because the parties rely on dueling declarations and exhibits, the Court "must determine the weight and sufficiency of the evidence before it." *Toshiba Glob. Com. Sols., Inc. v. Smart & Final Stores LLC*, 381 N.C. 692, 694 (2022). Following full briefing and a nonevidentiary hearing on 10 March 2026, the Court finds the following facts by a preponderance of the evidence.

### A. Findings of Fact

4.  Addison Partners is a limited liability company based in New York and organized under New York law. (*See* Am. Decl. B. Schneider ¶ 4, ECF No. 63.1.) The

company is in the real-estate business. It does not directly own or manage property; rather, its role is to identify target properties for purchase by affiliates. (*See* Am. Decl. B. Schneider ¶ 10.) The way that Addison Partners typically does this is by scouting investment-worthy properties, negotiating a purchase contract with a prospective seller, arranging financing, and then transferring the purchase contract before closing to a newly formed entity. (*See* B. Schneider 30(b)(6) Dep. 30:7–21, ECF Nos. 63.2, 67.1, 72.1.)

5. Tanglewood Apartments in Charlotte, North Carolina is one such property. In 2018, Addison Partners identified this apartment complex as an investment target, executed a letter of intent to buy the property, and procured a loan from Freddie Mac. At some point, Addison Partners transferred the purchase contract to Tanglewood Owners, a newly formed North Carolina company. It was Tanglewood Owners that closed the deal and acquired Tanglewood Apartments. (*See* Am. Decl. B. Schneider ¶¶ 5, 6; B. Schneider 30(b)(6) Dep. 30:22–31:5; *see also* Decl. A. Krist Ex. A-2, ECF No. 67.1.)

6. Over the next few years, Addison Partners maintained an affiliation with Tanglewood Owners. Although Addison Partners does not own or directly manage Tanglewood Owners, the two companies do share a degree of common management. Defendant Brian Schneider and nonparty Mary Stewart Malone (both New York residents) are managing members of not only Addison Partners but also AP Tanglewood Owner, LLC, which is in turn the sole managing member of Tanglewood Owners. (*See* Am. Decl. B. Schneider ¶¶ 1, 2, 10, 11; B. Schneider 30(b)(6) Dep.

16:20–25.)  In addition, Addison Partners provided financial assistance, including by advancing over $1 million in undocumented, no-interest loans to cover a variety of costs incurred by Tanglewood Owners.  (*See* B. Schneider 30(b)(6) Dep. 57:6–21, 58:17–59:21, 60:2–15.)

7.  In April 2024, Tanglewood Owners agreed to sell Tanglewood Apartments to North Carolina-based JKH for more than $8 million.  Schneider signed the purchase agreement on behalf of Tanglewood Owners as "Managing Member" of AP Tanglewood Owner.  (*See* Purch. Agrmt. at 26, ECF No. 71.1.)

8.  A lengthy due-diligence period followed.  The purchase agreement required Tanglewood Owners to deliver an array of documents, with the option to do so "through a website portal or other electronic delivery."  (Purch. Agrmt. § 3.5.1.) Schneider sent JKH's representatives an email with a link to an electronic data room containing many due-diligence materials, and Schneider and Malone sent additional documents and information to JKH via email as the due-diligence period progressed. (*See* Decl. J. Hancock ¶ 5 & Exs. B-1, B-2, ECF No. 67.2.)

9.  There is no dispute that Schneider and Malone were fulfilling Tanglewood Owners' obligations when they sent these materials to JKH.  But the parties dispute whether Schneider and Malone were also acting on behalf of Addison Partners. Contemporaneous evidence suggests that they were.

10.  Consider, first, the emails that Schneider and Malone sent to JKH, all of which came from their Addison Partners email addresses and bore their Addison Partners signature blocks.  (*See* Decl. J. Hancock Exs. B-1, B-2.)  At no point did

Schneider and Malone tell JKH that they were not representing Addison Partners or they were acting only in their capacities as representatives of Tanglewood Owners. (*See* B. Schneider 30(b)(6) Dep. 66:8–67:1; Decl. J. Hancock ¶ 6.) Likewise, the data room belonged to Addison Partners. Asked in his deposition if "Addison Partners set up [the] data room to post due diligence documents," Schneider testified that this was "[c]orrect." (B. Schneider 30(b)(6) Dep. 66:4–7.) What's more, the purchase agreement itself identifies Schneider and Malone as Addison Partners' representatives: section 13.6 directs JKH to send "[a]ll notices, demands, requests and other communications required or permitted hereunder" to the seller care of "Addison Partners" with attention to Schneider and Malone. (Purch. Agrmt. at 21.) This evidence tends to show that Schneider and Malone held themselves out as representatives of Addison Partners in connection with providing the due-diligence materials.

11.    To show otherwise, Addison Partners offers a declaration from Schneider in which he states that he "provided this information to JKH via e-mail in my capacity as managing member for AP Tanglewood Owners, LLC only." (Am. Decl. B. Schneider ¶ 9.) But this statement carries little weight. First, it conflicts with the contemporaneous evidence. Second, it also conflicts with Schneider's testimony that Addison Partners—not AP Tanglewood Owners—set up the data room. (*See* B. Schneider 30(b)(6) Dep. 66:4–7.) Third, other statements in the declaration are false or misleading, raising credibility concerns. Schneider states, for example, that "Addison Partners does no business in North Carolina" when, in fact, it has

negotiated at least one contract to purchase real estate in this State, transferred the contract to a North Carolina entity, and lent substantial sums to support that entity's operations over a period of years. (*Compare* Am. Decl. B. Schneider ¶ 12, *with* B. Schneider 30(b)(6) Dep. 35:5–20, 53:7–12, 57:6–21, 58:17–59:21, *and* Decl. A. Krist Ex. A-2.) Fourth, as of 2024, Tanglewood Owners owed Addison Partners as much as $800,000, giving it a financial interest in the sale to JKH and an incentive to ensure that the deal closed. (*See* B. Schneider 30(b)(6) Dep. 48:5–15.)

12. Having reviewed this evidence, the Court finds—for purposes of this motion only—that Schneider and Malone provided due-diligence materials to JKH on behalf of both Addison Partners and Tanglewood Owners.

13. Closing occurred in September 2024. Soon after, JKH began to suspect that the due-diligence materials provided by Schneider and Malone had overstated the apartment complex's occupancy, monthly income, and overall financial health. JKH then brought this lawsuit against Addison Partners, Tanglewood Owners, and Schneider, asserting overlapping claims for fraudulent inducement, negligent misrepresentation, and unfair or deceptive trade practices under N.C.G.S. § 75-1.1.

### B. Conclusions of Law

14. "Personal jurisdiction refers to the Court's ability to assert judicial power over the parties and bind them by its adjudication." *In re A.B.D.*, 173 N.C. App. 77, 83 (2005) (citation and quotation marks omitted). Determining whether personal jurisdiction exists is usually a "two-step analysis": jurisdiction must be authorized by the State's long-arm statute and consistent with the federal Due Process Clause.

*Beem USA LLLP v. Grax Consulting LLC*, 373 N.C. 297, 302 (2020). The parties address only the second, constitutional step, so the Court does the same.

15. Due process requires that a defendant "have certain minimum contacts" with this State "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citation and quotation marks omitted). Although courts "have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction," only the latter is at issue here. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (cleaned up). Put more succinctly, the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (cleaned up); *see also Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 366 (1986).

16. Jurisdiction cannot be based on "a defendant's 'random, fortuitous, or attenuated' contacts with the forum state." *Beem USA*, 373 N.C. at 303 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). Rather, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A "crucial factor" is foreseeability—that is, whether the defendant's contacts with the forum are such that it should "reasonably

anticipate being haled into court there." *Beem USA*, 373 N.C. at 303 (citations and quotation marks omitted).

17.    The Court concludes that JKH has carried its burden to establish a prima facie basis for jurisdiction. Addison Partners has substantial contacts with North Carolina that directly relate to this action. It entered into a contract to purchase Tanglewood Apartments (a North Carolina property), transferred that contract to Tanglewood Owners (a North Carolina entity), and advanced over $1 million in loans to Tanglewood Owners to help pay for maintenance, upkeep, and other operational expenses. Then, when Tanglewood Owners agreed to sell the apartment complex to JKH (also a North Carolina entity), Addison Partners played an active role in providing due-diligence materials. Addison Partners set up an electronic data room to house the materials for JKH to review, and its managing members, Schneider and Malone, sent JKH numerous communications containing other information and documents. Indeed, Addison Partners had good reason to take an active role: closing the transaction would allow Tanglewood Owners to repay as much as $800,000 in debt to Addison Partners. Through these actions, Addison Partners has purposefully availed itself of the privilege of conducting business in North Carolina. And without question, JKH's claims—that the due-diligence materials were fraudulent—relate to and arise out of Addison Partners' contacts with North Carolina.

18.    Addison Partners' arguments to the contrary miss the mark. It argues, for example, that it cannot be subject to jurisdiction in North Carolina based on Tanglewood Owners' contacts with the State. But that is not the issue. Everyone

agrees that the relevant contacts must be those that the defendant, not someone else, creates with the forum State. *See Walden*, 571 U.S. at 284–85. And a company "can only act through its agents." *Godwin v. Walls*, 118 N.C. App. 341, 348 (1995). As discussed, the weight of the evidence shows that Schneider and Malone held themselves out as representatives of Addison Partners when they provided due-diligence materials to JKH. Their contacts are Addison Partners' contacts. *See, e.g., Bauer*, 207 N.C. App. at 75 ("Personal jurisdiction may be based on contacts made by authorized agents under standard agency principles, including apparent agency." (citation and quotation marks omitted)); *Mabry v. Fuller-Shuwayer Co.*, 50 N.C. App. 245, 250–51 (1981) (assessing contacts by defendant's agents); *United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 987 F.2d 39, 45 n.13 (1st Cir. 1993) ("[T]he contacts of a corporation's agent obviously can subject the corporation to the personal jurisdiction of the forum in which those contacts occur.").

19. Addison Partners also appears to argue that Schneider and Malone could not have acted as its agent and Tanglewood Owners' agent at the same time. It cites no case law for that proposition, and the Court is not aware of any. Affiliated companies often have common management. Whether a manager's acts are attributable to just one entity or to both depends on the context. In frequent communications with JKH, Schneider and Malone exclusively used Addison Partners' data room, email addresses, and signature blocks. Never did they state that they were acting only as representatives of Tanglewood Owners. In similar circumstances, courts have not hesitated to attribute the agent's contacts to the

defendant company challenging jurisdiction. *See Shively v. ACI Learning Holdings, LLC*, 2025 NCBC LEXIS 112, at \*19 (N.C. Super. Ct. Aug. 27, 2025) (noting agent's use of "his Boathouse email address" and "collective language"); *see also Wingerd v. KAABOOWorks Servs., LLC*, 2018 U.S. Dist. LEXIS 148948, at \*13–14 (D. Kan. Aug. 31, 2018) (noting agents' use of "their '@madisoncos.com' email accounts" and failure to "state that they were acting only in their capacities as KAABOO officers").

20. Finally, at the hearing, Addison Partners' counsel argued that its transmission of due-diligence materials to JKH does not make it responsible for any representations contained in the materials. Even if that is true, it is a defense to liability on the merits, not to jurisdiction. The jurisdictional inquiry looks only to a party's contacts with the forum State. By providing the materials to JKH (a North Carolina company) in connection with the sale of Tanglewood Apartments (a North Carolina property), Addison Partners established contacts with this State that relate to and give rise to this dispute, thus supporting the exercise of jurisdiction. Whether Addison Partners made misrepresentations and intended to deceive JKH in the process are matters for discovery and adjudication on the merits.

21. In sum, it would not offend traditional notions of fair play and substantial justice to exercise jurisdiction over Addison Partners in these circumstances. The company has sufficient minimum contacts with North Carolina that are related to the asserted claims to support personal jurisdiction.

II.
CONCLUSION

22. For all these reasons, the Court **DENIES** the motion.

23. In addition, the Court **ORDERS** the parties to file a revised case management report and proposed case management order no later than 30 March 2026.

**SO ORDERED**, this the 13th day of March, 2026.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases