Columbus Life Ins. Co. v. Wells Fargo Bank, N.A., 2021 NCBC 52.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF PITT | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>21 CVS 0052 |
| COLUMBUS LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., as securities intermediary, and LSH, CO.<br><br>Defendants. | **ORDER AND OPINION ON MOTIONS TO DISMISS** |

THIS MATTER is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (ECF No. 8) pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and Defendant LSH, Co.'s Motion to Dismiss (ECF No. 32) pursuant to Rules 12(b)(2) and 12(b)(6).

THE COURT, having considered the Motions to Dismiss, the parties' briefs, the arguments of counsel, and other appropriate matters of record, CONCLUDES that the Motions to Dismiss should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

> *Cozen O'Connor by Tracy L. Eggleston and by Michael J. Broadbent for Plaintiff Columbus Life Insurance Company.*
>
> *K&L Gates LLP by Zachary S. Buckheit, Matthew T. Houston, and A. Lee Hogewood III and Schulte Roth & Zabel, LLP by Harry S. Davis and Robert E. Griffin for Defendants Wells Fargo Bank, N.A. and LSH, Co.*

Davis, Judge.

## INTRODUCTION

1.     Under longstanding North Carolina law, a life insurance policy that is taken out by one who lacks an insurable interest in the life of the insured is void as against public policy in that it constitutes an illegal wager on a human life.  In 1995, the North Carolina General Assembly enacted a statute that requires life insurance policies delivered in this State to contain a provision stating that the insurer cannot contest the validity of the policy more than two years after it has been "in force"— other than on the basis of nonpayment of premiums.  *See* N.C.G.S. § 58-58-22(2).  The key question currently before the Court—an issue of first impression in North Carolina—is whether this statute serves to preclude an insurance company from seeking to terminate a policy issued more than two years earlier on the ground that it is void as an illegal wagering contract.

## FACTUAL AND PROCEDURAL BACKGROUND

2.     The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) and instead recites those facts contained in the Complaint and in documents attached to the Complaint, or referred to therein, that are relevant to the Court's determination of the motions.  *See, e.g., Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681 (1986); *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017).

3.     In February 2005, insurance broker Wesley Chesson submitted an application to Plaintiff Columbus Life Insurance Company ("Columbus Life") for a life insurance policy on behalf of Dr. Earl Trevathan, Jr.  The application, which was

purportedly executed by Dr. Trevathan in Greenville, North Carolina, sought a $1 million policy with a $1 million rider, naming Dr. Trevathan as the initial owner and Dr. Trevathan's estate as the initial beneficiary. (*Id.* at ¶¶ 20–21.) The application also contained a representation that the proposed policy's benefits would be used for "Personal and Family Protection." (*Id.* at ¶ 22.) On March 9, 2005, Columbus Life issued the life insurance policy to Dr. Trevathan. ("Policy," ECF No. 3.1.) He was 81 years old at the time.[1] (*Id.* at p. 4.)

4. The Policy contains the following language that is pertinent to the present motions: "[Columbus Life] will not contest this policy to the extent of the initial Specified Amount after it has been in effect during the Insured's lifetime for two years from the Policy Date." (ECF No. 3.1, at p. 21.) This language was required by statute to be included in the Policy. *See* N.C.G.S. § 58-58-22(2).

5. On March 31, 2005, Chesson transmitted a check in the amount of the Policy's first premium payment ($94,190.16) to Columbus Life, drawn on the account of an entity named E&W, LLC ("E&W"). (ECF No. 3, at ¶ 24.)

6. Unbeknownst to Columbus Life at the time the Policy was issued in 2005: (a) Dr. Trevathan was not in the market for life insurance and was not in a financial position to afford premiums on a $2 million life insurance policy (*Id.* at ¶ 18); (b) Chesson had explained to Dr. Trevathan that a large policy could be procured on his life at no cost to him and that the policy would be sold to an investor (*Id.*); (c) Dr.

---

[1] As of the date the complaint in this action was filed, Dr. Trevathan was still alive and was 97 years old. (ECF No. 3, at ¶ 18.)

Trevathan only allowed the Policy to be procured because he would not be paying premiums and because the Policy was to be sold to an investor (*Id.*); (d) the entity that paid the premiums on the Policy, E&W, did so through a non-recourse premium finance loan to Dr. Trevathan (*Id.* at ¶ 27); (e) under the terms of the loan from E&W, Dr. Trevathan was under no obligation to pay premiums on the Policy (*Id.*); and (f) pursuant to the terms of the loan, Dr. Trevathan gave an immediate collateral assignment of the Policy to E&W (*Id.*).

7. On or about February 12, 2007, Columbus Life received written notification from Chesson's office that E&W's collateral assignment had been released effective February 8, 2007. (*Id.* at ¶ 29.) In June 2007, Columbus Life received a written request to change the Policy's owner and beneficiary to Church Street Nominees Limited. (*Id.* at ¶ 30.) In June 2012, ownership of the Policy was once again changed—this time to Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), as securities intermediary for the owner of the Policy, Defendant LSH, Co. ("LSH"). (*Id.* at ¶¶ 31–32.)

8. Having subsequently discovered the above-described circumstances under which the Policy was originally procured, Columbus Life now seeks a declaratory ruling from this Court that the policy was void *ab initio*[2] as the product of a "stranger-originated life insurance" ("STOLI") scheme.[3] (*Id.* at ¶¶ 30, 33.)

---

[2] "*Ab initio*" means "from the beginning." BLACK'S LAW DICTIONARY (11th ed. 2019).
[3] Under a STOLI scheme, STOLI promoters "pay all of the premiums for a policy—at no cost to the insured and with no risk to the insured—for the first two years of coverage, which [is] meant to coincide with the typical two-year contestability provision in a life insurance contract." (ECF No. 3, at ¶ 14.) "In turn, the STOLI promoter receives an immediate collateral assignment of the policy. At the end of the two-year period, the insured can simply

Columbus Life contends the Policy lacked an insurable interest from its inception as it was merely an impermissible wager on Dr. Trevathan's life and therefore void *ab initio*. (*Id*. at ¶ 33.) Wells Fargo and LSH, not surprisingly, disagree. (*Id*. at ¶ 35.)

9. Columbus Life originally initiated a lawsuit against Wells Fargo asserting the invalidity of the Policy in the United States District Court for the Eastern District of North Carolina on May 4, 2020 (the "Federal Action"), seeking a declaration as to whether the Policy is valid under North Carolina law. On December 8, 2020, United States District Judge Richard E. Myers II entered an order declining to rule on Wells Fargo's motion to dismiss the action, stating that because the parties' arguments raised unsettled issues of North Carolina state law, the dispute should be adjudicated in the courts of North Carolina rather than by a federal court. *See Columbus Life Ins. Co. v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 231313, at *17 (E.D.N.C. Dec. 8, 2020).

10. Specifically, Judge Myers stated his belief that North Carolina's courts should have the opportunity to determine the interplay between (1) the North Carolina General Assembly's 1995 enactment of N.C.G.S. § 58-58-22(2), which requires life insurance policies to include a provision precluding insurers from contesting the validity of the policy more than two years after the policy has been in force, except in the case of non-payment of premiums; and (2) the decision of the North

---

walk away from the transaction by 'relinquishing' the policy to the STOLI promoter, or sell the policy to a different STOLI investor." (*Id*. at ¶ 15.) "[T]he initial intent of such transactions is to create policies that are not needed to protect the insured or their family or for any legitimate life insurance purpose, but instead are used as a wagering device so that strangers can gamble on the insured's life." (*Id*.)

Carolina Supreme Court in *Wharton v. Home Sec. Life Ins. Co.*, 206 N.C. 254 (1934), which held that the presence of an incontestability clause in a life insurance policy did not bar a challenge to the policy by the insurer beyond the stated incontestability period based on the lack of an insurable interest. Accordingly, Judge Myers dismissed the Federal Action without prejudice to Columbus Life's right to refile the case in state court. *Columbus Life*, 2020 U.S. Dist. LEXIS 231313, at *18.

11. On January 7, 2021, Columbus Life initiated the present action by filing a complaint in Pitt County Superior Court. The Complaint contains two related causes of action: (1) a claim seeking a declaratory judgment from this Court that the Policy is an illegal wagering contract on a human life; and (2) a claim seeking a declaratory judgment from this Court that the policy is void *ab initio* for lack of an insurable interest. On March 5, 2021, this case was designated as a mandatory complex business case and assigned to the Honorable Gregory P. McGuire.

12. Wells Fargo filed a Motion seeking dismissal of this action pursuant to Rule 12(b)(6) on March 15, 2021. (ECF No. 8.)

13. On April 26, 2021, LSH filed a Motion seeking dismissal of all claims against it under Rules 12(b)(2) and (6). (ECF No. 32.) LSH also submitted the affidavit of Irina Danaila Gladek in support of its motion based on Rule 12(b)(2).

14. This matter was reassigned to the undersigned on July 1, 2021. (Reassign. Ord., ECF No. 43.) A hearing on the pending motions was held on July 21, 2021. The Motions to Dismiss are now ripe for resolution.

**STANDARD OF REVIEW**

**A.     Rule 12(b)(6)**

15.     A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681 (1986). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987). In deciding a Rule 12(b)(6) motion to dismiss, the court construes the complaint liberally and accepts all well-pleaded factual allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577 (2009); *Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274 (2005) (citation omitted).

16.     Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citation omitted). The Court may consider any such attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147

N.C. App. 52, 60 (2001) (citation omitted); *see also Window World*, 2017 NCBC LEXIS 60, at *11.

17. "It is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166 (2002)).

**B.    Rule 12(b)(2)**

18. When a defendant moves to dismiss a complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff carries the burden of establishing that the trial court possesses personal jurisdiction over the defendant. *See Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68 (2010).

19. "The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693 (2005). If the trial court considers affidavits and other documentary evidence submitted by the parties in connection with the Rule 12(b)(2) motion and also holds a hearing on the motion, the court acts as a fact-finder and determines whether the plaintiff has established personal jurisdiction by a preponderance of the evidence. *See Deer Corp. v. Carter*, 177 N.C. App. 314, 322 (2006).

20.     "Once a defendant submits an affidavit or evidence challenging personal jurisdiction, unverified allegations in a complaint conflicting with that evidence may no longer be taken as true," although "allegations in [the] complaint uncontroverted by [the evidence] are still taken as true." *Weisman v. Blue Mt. Organics Distrib., LLC*, 2014 NCBC LEXIS 41, at *2 (N.C. Super. Ct. Sept. 5, 2014) (citing *Banc of Am. Sec.*, 169 N.C. App. at 693–94).

## ANALYSIS

### A.     Wells Fargo's Motion to Dismiss

21.     Wells Fargo's sole argument is that the Court should dismiss this action pursuant to Rule 12(b)(6) because North Carolina's incontestability statute—N.C.G.S. § 58-58-22(2)—prohibits Columbus Life from now challenging the validity of the Policy, which was issued in 2005.[4]  In support of this argument, Wells Fargo contends that this Court (a) is no longer bound by our Supreme Court's decision in *Wharton* because that case was abrogated by North Carolina's subsequently enacted incontestability statute; and (b) should reject the reasoning of decisions from other jurisdictions that have declared STOLI policies to be invalid even when their validity was not challenged until after the applicable incontestability period had expired.

22.     In response, Columbus Life argues that (a) life insurance policies procured without an insurable interest are void *ab initio* in North Carolina; and (b) such policies may be contested based on a lack of insurable interest at any time because incontestability clauses do not apply to a policy that is void from inception.

---

[4] LSH's Motion contains this identical argument based on Rule 12(b)(6) in addition to its jurisdiction-based argument under Rule 12(b)(2).  (ECF No. 32.)

23.     Wells Fargo acknowledges, as it must, that all of Columbus Life's allegations in the Complaint must be taken as true for purposes of Rule 12(b)(6) such that the Court is required to assume that the Policy actually was a STOLI policy from its inception.  Moreover, although Wells Fargo has forecast that it intends to argue at the summary judgment stage that an insurable interest *did*, in fact, exist at the time the Policy was issued, it is not advancing such an argument at the present time.

24.     At the outset, the Court observes that the issue of whether a statutorily mandated incontestability clause contained in a STOLI policy limits an insurer's ability to contest the validity of the policy on that ground is one of first impression in North Carolina.

25.     As discussed in the parties' briefs, there is currently a split of authority from other jurisdictions as to whether challenges to the validity of life insurance policies based on the absence of an insurable interest may be made beyond the applicable incontestability period.  Some courts have allowed such challenges by an insurer.  *See, e.g., Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839, 851 (N.J. 2019) (concluding that "STOLI policies run afoul of New Jersey's insurable interest requirement" and holding that insurers may seek to void such policies even after the incontestability period has run); *PHL Variable Insurance Co. v. Price Dawe 2006 Insurance Trust*, 28 A.3d 1059, 1065 (Del. 2011) ("[A] life insurance policy lacking an insurable interest is void as against public policy and thus never comes into force, making the incontestability provision inapplicable."); *Carton v. B&B Equities Group, LLC*, 827 F.Supp.2d 1235, 1245 (D. Nev. 2011)

("Because the Policies were void ab initio [for lack of insurable interest], the Policies were never truly in existence.").

26. Other courts have rejected attempts by insurers to challenge the validity of the policy on this ground once the incontestability period has run. *See, e.g., PHL Variables Ins. Co. v. Bank of Utah*, 780 F.3d 863, 871 (8th Cir. 2015) (holding that insurance policy could not be challenged as void *ab initio* for lack of an insurable interest beyond the two year incontestability period because "[t]o declare that a facially valid policy on which [the insurer] collected substantial premiums for over four years was never 'in force' [due to a lack of an insurable interest] is simply a fiction"); *Sun Life Assur. Co. v. Wilmington Trust Co.*, 2017 U.S. Dist. LEXIS 35785, at *8 (D. Utah Mar. 13, 2017) ("To invalidate policies [for lack of insurable interest] long after the period of incontestability would give an insurance company a perverse incentive to reap windfalls by not challenging suspect policies up front so that the company may collect premiums indefinitely, and only later, after risks are fully quantified, allege illegality."); *Wells Fargo Bank, Nat'l Ass'n v. Pruco Life Ins. Co.*, 200 So. 3d 1202, 1207 (Fla. 2016) (holding that, under Florida law, an insurer cannot "challenge the validity of a life insurance policy after the two-year incontestability period . . . because of its creation through a STOLI scheme").

27. Our Supreme Court has long deemed life insurance policies lacking an insurable interest to be invalid wagering contracts that are void as against public policy. *See Crump v. Southern-Dixie Life Ins. Co.*, 204 N.C. 439, 440 (1933) ("A policy of insurance on the life of another issued to the beneficiary, who has no insurable

interest in the life insured, is void, as against good morals and sound public policy, where the premiums are paid by the beneficiary."); *Hardy v. Aetna Life Ins. Co.*, 152 N.C. 286, 288–89 (1910) (holding that a valid life insurance policy must have "an insurable interest at the time the contract is entered into" and may later be assigned to one not having an insurable interest "provided this assignment is in good faith, and not a mere cloak or cover for a wagering transaction"); *Hinton v. Insurance Co.*, 135 N.C. 314, 324–27 (1904) (stating that a life insurance policy would be void if proven that it was taken out by way of an agreement with a third party with no insurable interest pursuant to which the policy would be "immediately assigned" to the third party "who was to pay the admission fee and all of the premiums"); *Trinity College v. Travelers' Ins. Co.*, 113 N.C. 244, 248 (1893) (holding that life insurance contracts without an insurable interest "become[ ] what the law denominates a wagering contract" and "all such contracts must be declared illegal and void, no matter what good object the parties may really have in view"); *Burbage v. Windley*, 108 N.C. 357, 361–62 (1891) (ruling that a life insurance policy procured without an insurable interest is against public policy as "simply a wager" and "a mere gambling speculation" on a human life); *see also Allgood v. Wilmington Sav. & Trust Co.*, 242 N.C. 506, 513–14 (1955) (acknowledging that a policy procured without an insurable interest is an illegal wagering policy).

28.     The North Carolina Supreme Court has held that a void contract is "no contract at all; it binds no one and is a mere nullity." *Bryan Builders Supply v. Midyette*, 274 N.C. 264, 270 (1968). When a contract is executed in violation of public

policy, it will be deemed "void *ab initio*" and "unenforceable." *Khwaja v. Khan*, 239 N.C. App. 87, 92 (2015).

29.     In *Wharton*, our Supreme Court held that a life insurance policy lacking an insurable interest and containing an incontestability clause drafted by the parties was void *ab initio* and that the insurer was permitted to challenge the policy's validity beyond the incontestability period.  206 N.C. at 256–57.

30.     *Wharton* was an action brought by the plaintiff beneficiary of a life insurance policy to recover an amount due on the policy.  The Supreme Court held that both the original beneficiary and the substituted beneficiary (plaintiff) of the policy lacked an insurable interest in the life of the insured.  *Id.* at 256.  After acknowledging the well-settled law in North Carolina that a person cannot take out a "valid and enforceable" life insurance policy without an insurable interest in the life of the insured, the Court proceeded to address the plaintiff's contention that this principle was inapplicable because of the parties' inclusion of an incontestability clause in the insurance contract.  *Id.* at 256–57.

> This contention cannot be sustained.  The parties to a contract which is void because in contravention of well settled public policy, cannot bind themselves by such contract, and thus deprive the courts of the power to enforce the public policy of the State by their judgments.  In *Bromley v. Ins. Co. (Ky.),* 122 Ky. 402, 92 S.W. 17, 5 L. R. A. N. S., 747, it is well said: 'It is also insisted for the plaintiff that as the policies contain a clause to the effect that they are incontestable after one year, the company cannot rely upon this defense.  But the incontestable clause is no less a part of the contract than any other provision of it.  If the contract is against public policy, the Court will not lend its aid to its enforcement.  The defense need not be pleaded.  If at any time it appears in the process of the

> action that the contract sued upon is one which the law
> forbids, the Court will refuse relief.'

*Id.* (emphasis added). Therefore, the Court concluded that "there was error in the refusal of the trial court to dismiss the action[.]" *Id.* Our Supreme Court has never overruled *Wharton*, and, accordingly, it remains a binding precedent upon this Court.[5]

31. Approximately sixty years after Wharton was decided, the North Carolina General Assembly enacted N.C.G.S. § 58-58-22(2), which provides in relevant part as follows:

> No policy of individual life insurance shall be delivered in this State unless it contains the following provisions, or provisions that in the Commissioner's opinion are more favorable to the person insured:
> . . .
> (2) Incontestability. – A provision that the validity of the policy shall not be contested, except for nonpayment of premium, once it has been in force for two years after its date of issue; and that no statement made by any person insured under the policy about that person's insurability shall be used during the person's lifetime to

---

[5] Wells Fargo argues that other North Carolina cases, particularly *Chavis v. Southern Life Insurance Co.*, 318 N.C. 259 (1986), "introduce[ ] ambiguity" into the pre-1995 North Carolina common law because of their reiteration of the general rule that policies containing an incontestability clause cannot be challenged on any ground other than those specifically allowed by the clause itself. (ECF No. 9, at p. 15; ECF No. 26, at pp. 6–7; citing to *Chavis*, 318 N.C. at 262 (1986); *Mills v. Metro. Life Ins. Co.*, 210 N.C. 439, 441 (1936); *Mauney v. Metro. Life Ins. Co.*, 209 N.C. 499, 503 (1936).) However, a key difference between the cases cited by Wells Fargo and *Wharton* is that none of those cases address a challenge to a policy based on the lack of an insurable interest. *See Chavis*, 318 N.C. at 261 (addressing challenge to validity of policy due to "fraudulent and material misrepresentations of fact" in the application for reinstatement); *Mills*, 210 N.C. at 441 (addressing whether an incontestability clause precluded a challenge that the original claim for disability benefits "was grounded on false and fraudulent statements"); *Mauney*, 209 N.C. at 502 (addressing challenge to validity of policy due to "fraudulent statements as to the condition of the health of the plaintiff" that were made in his application for insurance). Accordingly, the Court is not persuaded that these cases cited by Wells Fargo create any ambiguity as to the continuing precedential effect of *Wharton*.

> contest the validity of the policy after the insurance has been in force for two years.

N.C.G.S. § 58-58-22(2). Wells Fargo contends that the enactment of this law reflects a declaration of public policy by our legislature that even challenges to the validity of a life insurance policy on the ground that it is void for lack of an insurable interest must be made within two years of the date the policy was issued.

32. As discussed above, this Court is bound under Rule 12(b)(6) by Columbus Life's allegations in its Complaint that the Policy lacks an insurable interest. *Wharton* holds that such life insurance policies are void. As a result, the only remaining question is whether North Carolina's incontestability statute serves as a categorical bar to Columbus Life's attempt to seek invalidation of the Policy given the passage of more than two years since the Policy was originally issued.

33. It is axiomatic that our General Assembly is free to declare and change North Carolina's public policy any time it desires to do so. *See In re Philip Morris*, 335 N.C. 227, 230 (1993) ("The general rule in North Carolina is that absent constitutional restraint, questions as to public policy are for legislative determination." (internal quotation marks omitted) (citation omitted)). The Court is not convinced, however, that the mere enactment of the incontestability statute in 1995 reflects a legislative intent to abrogate the ruling in *Wharton*. Unless and until our General Assembly changes the public policy of North Carolina, life insurance policies that lack an insurable interest are "wagering contracts" and thus not merely voidable but rather void *ab initio*—that is, they never take effect. As a result, taking Columbus Life's allegations in the Complaint as true, the subject Policy was never

"in force" within the meaning of N.C.G.S. § 58-58-22(2). Thus, although the Policy contained a two-year incontestability clause as was statutorily required, neither that clause nor any other provision of the Policy ever became legally operative. *Wharton* makes clear that the presence of an incontestability clause in a life insurance policy that is lacking an insurable interest from its inception does not preclude an attack on the policy's validity even after the expiration of the contestability period. This result remains unchanged even if the incontestability clause is required by statute, where—as here—the legislature has not expressly articulated a change in North Carolina's public policy regarding the void *ab initio* status of such policies.

34. Although this Court is, of course, not bound by decisions from other jurisdictions in ruling on an issue of North Carolina law, it may consider such cases that it deems instructive. *See Carolina Power & Light Co. v. Employment Sec. Comm'n of N.C.*, 363 N.C. 562, 569 (2009). The Court finds several decisions from other courts addressing this same issue to be well-reasoned.

35. In *Sun Life*, the Supreme Court of New Jersey addressed the issue of whether the issuing insurer of a STOLI policy that included a statutorily required two-year incontestability clause could challenge the policy as void *ab initio* for lack of an insurable interest in an action brought more than two years after the policy's issuance. 208 A.3d at 841. Initially, the court stated that "it has generally been held that an insurance policy violative of public policy or good morals cannot be enforced simply because the incontestability period has run." *Id*. at 846 (quoting *Tulipano v.*

*U.S. Life Ins. Co.*, 154 A.2d 645, 650 (N.J. Super. Ct. Oct. 7, 1959)).  Based on its review of similar cases from other jurisdictions, the court recognized that

> [a] majority of courts have held that the lack of an insurable interest can be asserted as a defense even after a policy has become incontestable.  *See, e.g.*, [ ] *Price Dawe* [ ], 28 A.3d [ ] at 1067–68 [ ]; *Beard v. Am. Agency Life Ins. Co.*, [ ] 550 A.2d 677, 691 (Md. 1988); *see also* 17 COUCH ON INSURANCE § 240:82 ("The majority of jurisdictions follow the view that an incontestable clause does not prohibit insurers from resisting payment on the ground that the policy was issued to one having no insurable interest -- such a defense may be raised despite the fact that the period of contestability has expired."); 8 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 83.09 (2018) ("Nearly every jurisdiction that has addressed the issue holds that a policy lacking an insurable interest is void and is not rendered valid by an incontestability provision.").

*Sun Life,* 208 A.3d at 846.  Accordingly, the court held that

> an incontestability provision does not bar a challenge to a STOLI policy.  As discussed earlier, insurance contracts that are contrary to public policy cannot be enforced despite an incontestability clause.  If a policy never came into effect, neither did its incontestability clause; the clause thus cannot stand in the way of a claim that the policy violated public policy because it lacked an insurable interest.

*Id*. at 851 (cleaned up).

36.    In *Price Dawe*, the Supreme Court of Delaware similarly considered "whether an insurer may claim that a life insurance policy never came into existence, on the basis of a lack of insurable interest, where the challenge occurs after the insurance contract's mandatory contestability period expires."  28 A.3d at 1064.  In its analysis, the court stated as follows:

[t]he defendant[s] . . . argue that the plain language of section 2917 makes clear that an incontestability clause precludes any challenge to the enforceability of a life insurance contract after the two-year contestability period expires. This argument ignores the fact that the Delaware General Assembly chose to implement its goals through a mandatory contractual term, as distinguished from a direct ban on challenges to policy validity after a certain time. This creates an ambiguity in section 2917 on the meaning of the word "validity." We read the statute to be entirely subject to Delaware's existing law of contract formation. Put simply, under the Delaware statute, the incontestability provision should be treated like any other contract term. That reading is supported by the plain language of [Delaware's incontestability statute], which states that "[t]here shall be a provision that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than 2 years." These words accordingly make the incontestability period directly contingent on the formation of a valid contract. That is the view of the majority of state courts that have considered this question.

*Id.* at 1066–67. Furthermore, the court acknowledged that

[u]nder Delaware common law, if a life insurance policy lacks an insurable interest at inception, it is void *ab initio* because it violates Delaware's clear public policy against wagering. It follows, therefore, that if no insurance policy ever legally came into effect, then neither did any of its provisions, including the statutorily required incontestability clause. The incontestable clause is no less a part of the contract than any other provision of it. As a result, the incontestability provision does not bar an insurer from asserting a claim on the basis of a lack of insurable interest.

*Id.* at 1067–68 (cleaned up). As a result, the court concluded that "an insurer can challenge the enforceability of a life insurance contract after the incontestability period where a lack of insurable interest voids the contract." *Id.* at 1068.

37.     In the present case, Wells Fargo also contends that the Policy's own language requires a determination that it was in force for more than two years.  In making this argument, Wells Fargo relies upon the following provision:

> [t]he policy will not take effect until You receive it and pay the minimum initial premium as described in the ***Payment of Premiums*** section while the Insured is alive and in the same health as indicated in the application.  It will take effect anew on any reinstatement date. The policy will be "in force" from the time it takes effect until in [sic] ends as described in the ***Termination*** section.

(*Id*. at p. 22 (emphasis in original).)  Based on this provision, Wells Fargo argues that the Policy has been "in force" since the payment of the initial premium.  (ECF No. 9, at p. 18.)  However, Wells Fargo has cited no legal authority—and the Court is aware of none—providing that parties may stipulate to the legal validity of contracts in violation of public policy.

38.     Finally, Wells Fargo strenuously argues that the denial of its Motion to Dismiss will incentivize insurance companies to engage in unscrupulous tactics such as continuing to accept premiums on known STOLI policies for as long as possible and waiting to challenge such policies as void in order to maximize their receipt of such premiums.  However, none of the public policy issues raised by Wells Fargo are relevant to the discrete legal question currently before the Court.  Rather, as noted above, the only issue raised by Wells Fargo's Motion is whether Columbus Life has stated a valid claim for relief under Rule 12(b)(6).

39.     Accordingly, for the reasons stated above, the Court concludes that Wells Fargo's Motion seeking dismissal of the Complaint pursuant to Rule 12(b)(6) should be DENIED.

**B.      LSH's Motion to Dismiss**

40.      LSH's Motion seeks dismissal of the claims against it under both Rule 12(b)(2) and Rule 12(b)(6).  Its Rule 12(b)(6) motion is predicated on the same argument advanced by Wells Fargo and therefore lacks merit.

41.      In addition, however, LSH seeks dismissal pursuant to Rule 12(b)(2) based on its contention that "[t]he Court lacks both specific and general personal jurisdiction over LSH where LSH has no contacts with the State of North Carolina and is not otherwise subject to the Court's jurisdiction."

42.      North Carolina courts engage in a "two-step analysis" to determine whether personal jurisdiction exists over a defendant.  *Beem USA Limited-Liability Ltd. P'ship v. Grax Consulting, LLC*, 373 N.C. 297, 302 (2020).  "First, jurisdiction over the defendant must be authorized by N.C.G.S. § 1-75.4—North Carolina's long-arm statute." *Id*. at 302.  "Second, if the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution."  *Id*. (citation and internal quotation marks omitted).

43.      The Due Process Clause limits the personal jurisdiction of state courts by requiring that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit [in that state] does not offend 'traditional

notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). The United States Supreme Court has recognized two types of personal jurisdiction in its decisions addressing the minimum contacts requirement: general jurisdiction and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011); *Beem*, 373 N.C. at 303.

44. General jurisdiction exists when the defendant's contacts "are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317). A court with general jurisdiction can adjudicate "any and all claims against" the defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). Unlike general jurisdiction, specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (citation and internal quotation marks omitted). As a result, specific jurisdiction requires some connection between the forum state and the underlying action such that "the suit arises out of or relates to the defendant's contacts with the forum." *Daimler*, 571 U.S. at 127 (alterations, citation, and internal quotation marks omitted).

45. Here, LSH—a "public limited liability company . . . incorporated and existing under the laws of the Grand-Duchy of Luxembourg with its principal place of business in Luxembourg" (ECF No. 3, at ¶ 6)—is the down-stream purchaser of the

Policy, having been the beneficial owner of the Policy since May 2012 pursuant to an agreement with a Florida-based entity which itself acquired the policy from a Cayman Islands-based entity. (Gladek Affidavit, ECF No. 33.2, at ¶ 9.) Nevertheless, the Policy is technically owned by Wells Fargo as a financial asset in an account in which LSH is the entitlement holder, thus making Wells Fargo the beneficiary of record on the Policy. (*Id.*)

46. The allegations in the Complaint relating to LSH are sparse. Paragraph 8 alleges that LSH purchased the Policy and is the beneficial owner of the Policy, which is held by Wells Fargo as securities intermediary. Paragraph 32 asserts that LSH is the "real purported owner of the Policy" and is "a Luxembourg entity whose entire business is purchasing life insurance policies on the lives of seniors in the United States' secondary/tertiary life settlement market in the hopes of cashing-in when those seniors pass away." (*Id.* at ¶ 32.)

47. Preliminarily, the Court notes that Columbus Life does not argue that this Court has *general* personal jurisdiction over LSH. Instead, it contends that jurisdiction exists based on the theory of *specific* jurisdiction.

48. Accordingly, this Court must determine whether jurisdiction is authorized over LSH by North Carolina's long-arm statute and, if so, whether the exercise of personal jurisdiction over LSH would violate its rights under the Due Process Clause.

49. In an affidavit submitted by LSH, Irina Danaila Gladek, a Director of LSH, detailed the extent, or absence thereof, of LSH's contacts with North Carolina.

(*See* Gladek Affidavit, ECF No. 33.2, at ¶¶ 3–8.) Specifically, Gladek testified that (a) LSH is not incorporated in North Carolina and does not have its principal place of business in North Carolina, let alone, in any state in the United States (*Id.* at ¶ 3); (b) LSH has never conducted business in North Carolina or derived any substantial revenue from business activities in North Carolina (*Id.* at ¶ 4); (c) LSH neither owns real property in North Carolina, nor does it maintain any offices or facilities, post office boxes, mail drops, telephone listings, or bank accounts in the State (*Id.* at ¶ 5); (d) none of LSH's officers, directors, agents, or employees maintain residence or a primary place of business in North Carolina, and none of them are physically located in North Carolina (*Id.* at ¶ 6); (e) LSH has never commenced any legal action or proceeding in North Carolina and has never been named previously as a defendant in any action in North Carolina (*Id.* at ¶ 7); and (f) LSH has not undertaken any act in North Carolina in connection with the events or claims alleged in this lawsuit (*Id.* at ¶ 8). Columbus Life has provided no evidence contrary to the Gladek Affidavit. Therefore, the Court accepts them as true for purposes of the Rule 12(b)(2) motion. *See Deer Corp.*, 177 N.C. App. at 322.

50. Nevertheless, Columbus Life asserts that personal jurisdiction exists under two discrete provisions of North Carolina's long-arm statute—N.C.G.S. §§ 1-75.4(5)(c) and (10)(b). Pursuant to subsection (5)(c), North Carolina courts have personal jurisdiction in an action which "[a]rises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this state goods, documents of

title, or other things of value[.]" N.C.G.S. § 1-75.4(5)(c). Here, however, Columbus Life has not alleged the existence of any promise made by LSH to Columbus Life or to a third party for Columbus Life's benefit.

51. Under subsection (10), North Carolina courts have personal jurisdiction

> in any action which arises out of a contract of insurance . . . made anywhere between the plaintiff or some third party and the defendant and in addition either:
>
> a. The plaintiff was a resident of this State when the event occurred out of which the claim arose; or
> b. The event out of which the claim arose occurred within this State, regardless of where the plaintiff resided.

N.C.G.S. § 1-75.4(10). Here, even assuming LSH's acts in becoming the beneficial owner of the Policy constitute entering into a "contract of insurance," the current action does not "arise out of" any contract entered into by LSH. Rather, this action arises out of the circumstances under which the Policy was originally issued back in 2005—well before LSH came into the picture in 2012 as a downstream purchaser.

52. Accordingly, the Court finds that neither of Columbus Life's asserted grounds for personal jurisdiction under North Carolina's long-arm statute apply.

53. This Court's determination on this issue is supported by the decision in *Est. of Daher v. LSH Co.*, 2021 U.S. Dist. LEXIS 9409 (D. Del. January 19, 2021) which addressed a similar fact pattern involving several of the same parties to the present case.

54. In *Daher*, the estate of the insured life on a life insurance policy alleged to have been the product of a STOLI scheme sued the beneficial owner of the policy, LSH, and the record owner, Wells Fargo, as securities intermediary, seeking to

recover the death benefit that was paid out to LSH. *Id.* at \*1–10. LSH filed a motion to dismiss for lack of personal jurisdiction. *Id.* The plaintiff argued that personal jurisdiction existed over LSH under certain provisions of Delaware's long-arm statute, essentially affording courts in Delaware personal jurisdiction over a nonresident who, either personally or through an agent, transacts business in Delaware, causes tortious injury in Delaware, or causes tortious injury outside of Delaware if the nonresident regularly engages in business in the state or derives substantial revenue therein. *Id.* at \*13. The court found that the plaintiff had failed to demonstrate that jurisdiction existed under these statutory provisions, emphasizing LSH's lack of presence in Delaware, the fact that "none of LSH's activities with respect to the [p]olicy are alleged to have occurred in Delaware," and that LSH was merely a "downstream purchaser of certain life insurance policies, some of which are subject to Delaware law." *Id.* at \*14–18. Accordingly, given the plaintiff's inability to demonstrate jurisdiction under Delaware's long-arm statute, the court granted LSH's motion to dismiss for lack of personal jurisdiction.[6] *Id.* at \*20.

55.     Columbus Life has similarly failed to demonstrate the existence of personal jurisdiction over LSH under North Carolina's long-arm statute. Accordingly, this Court need not engage in a minimum contacts analysis under the

---

[6] Although the court found that "it is not necessary . . . to consider whether LSH has minimum contacts with Delaware such that due process is satisfied" due to its ruling that plaintiff had failed to establish jurisdiction under Delaware's long-arm statute, the court nevertheless concluded that LSH also lacked minimum contacts with Delaware under the due process clause. *Daher*, 2021 U.S. Dist. LEXIS 9409, at \*18–20.

due process clause. The Court concludes that LSH's Motion seeking dismissal of all claims against it pursuant to Rule 12(b)(2) should be GRANTED.

## CONCLUSION

**THEREFORE, IT IS ORDERED** that the Motions to Dismiss are **GRANTED**, in part, and **DENIED**, in part, as follows:

1. Wells Fargo's Motion seeking dismissal of the Complaint pursuant to Rule 12(b)(6) is **DENIED**.

2. LSH's Motion seeking dismissal of all claims against it pursuant to Rule 12(b)(2) is **GRANTED**.

3. LSH's Motion seeking dismissal of the Complaint pursuant to Rule 12(b)(6) is **DENIED AS MOOT**.

**SO ORDERED**, this the 2nd day of September, 2021.


/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases