IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-783

Filed 6 May 2026

Wake County, Nos. 24CV027842-910, 24CV601750-910

DAN GREENHAUS, LEORA GREENHAUS, Plaintiffs,

v.

DANIEL MOSHE GOLDSTEIN, Defendant.

Appeal by defendant from judgment entered 4 November 2024 by Judge Christine M. Walczyk in Wake County District Court. Heard in the Court of Appeals 16 February 2026 in session at the Norman Adrian Wiggins School of Law, Campbell University in the City of Raleigh pursuant to N.C. Gen. Stat. § 7A-19(a) (2025).

*Wake Forest University School of Law, by John J. Korzen, for the plaintiffs-appellees.*

*Davis Hartman Wright, LLP, by R. Daniel Gibson, for the defendant-appellant.*

TYSON, Judge.

Daniel Moshe Goldstein ("Defendant" or "Mr. Goldstein") appeals from the trial court's orders denying his motions to dismiss for lack of personal jurisdiction the complaints filed against him by Dan Greenhaus ("Plaintiff" or "Mr. Greenhaus") and Leora Greenhaus ("Plaintiff" or "Mrs. Greenhaus")(collectively "Plaintiffs").

## I. Background

Mrs. Greenhaus briefly dated Mr. Goldstein for approximately six months in

2004 or 2005 when both of them lived in New Jersey. Mrs. Greenhaus has been married to Mr. Greenhaus for thirteen years. Plaintiffs moved to North Carolina in 2014 and reside in Wake County. Plaintiffs are parents of a seven-year-old son.

The Greenhauses allege in 2022, Mr. Goldstein began sending excessive and harassing communications to them and their friends, family, employers, and associates. Mrs. Greenhaus filed a complaint seeking a domestic violence protective order in Wake County District Court on 4 September 2024. The complaint alleged since 2022 Mr. Goldstein had sent approximately three thousand harassing and pornographic emails to her and her husband's employers attempting to get them fired from their employment, and emails and pornographic images to colleagues, family members, members of the clergy associated with the Greenhauses, and their son's schoolteachers. Mrs. Greenhaus alleged some of the emails include horrendous statements about the Greenhauses' son.

The complaint also alleged Mr. Goldstein had stated he would "never stop" the harassment. The Greenhauses contacted the Raleigh Police Department and the Wake County District Attorney's Office about Mr. Goldstein's behavior.

Mr. Greenhaus also filed a complaint for a no-contact order for stalking or nonconsensual sexual conduct. The complaint alleged between April and June 2022, Mr. Goldstein had contacted him "directly or indirectly, for the purpose of harassment" more than four hundred times. The communications also included text messages, emails, mailings and packages directed towards his employers, family

members and friends.

Mr. Greenhaus further alleged Mr. Goldstein "has signed me up for multiple food orders at restaurants, with cash due on pickup, resulting in the restaurants calling me all day and night," and Mr. Goldstein had sent obscene messages about him to his coworkers and social media connections. The complaint also alleged Mr. Goldstein had contacted government agencies to have Mr. Greenhaus's EMT certification revoked, sent pornography to his place of employment, and Mr. Greenhaus's "phone rings constantly from all the sales calls that [Mr. Greenhaus] signs me up for, as did [calls to his employer's] phone from realtors."

Mr. Goldstein was served with the summonses and complaints at an address in Texas. The trial court entered *ex parte* domestic violence protection and no-contact orders against Mr. Goldstein.

On 18 September 2024, Mr. Goldstein filed motions to dismiss the Greenhaus's complaints under Rule 12(b)(2) and challenged personal jurisdiction of the Wake County District Court over him. The matter was heard on 27 September 2024.

At the hearing, Mr. Goldstein submitted a one-page affidavit, which had been signed the day before. It stated in its entirely: (1) he was a resident of Texas; (2) has never been to North Carolina; (3) does not plan to go to North Carolina; and, (4) has never, nor does he plan to, conduct business, participate in the market or enter into a contractual relationship in North Carolina. Mr. Goldstein offered no further evidence or testimony. Mr. and Mrs. Greenhaus both appeared and testified

regarding the multiple contacts and communications Mr. Goldstein had made to them and others. The trial court concluded it possessed personal jurisdiction over Mr. Goldstein, denied his Rule 12(b)(2) motions to dismiss, and permitted the matters to proceed to trial. Defendant appeals.

## II.  Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 1-277(b) (2025), which gives an interested party "the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant[.]"

## III.  Issues

Mr. Goldstein argues the trial court erred by:  (1) applying the incorrect standard of proof to determine whether the court possessed personal jurisdiction over him; (2) making findings of fact, which are either recitations of the testimony or conclusions of law rather than proper findings of fact; (3) concluding the long-arm statute confers personal jurisdiction over him; and, (4) concluding Mr. Goldstein's conduct created sufficient minimum contacts with the State of North Carolina to permit our courts to exercise personal jurisdiction over him under the Due Process Clause.

## IV.  Standard of Review

"When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court."

*Timothy L. Hardin v. York Mem'l Park*, 221 N.C. App. 317, 321, 730 S.E.2d 768, 773 (2012) (quoting *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693-94, 611 S.E.2d 179, 182-83 (2005)).

## V. Burden of Proof

Mr. Goldstein first argues the trial court incorrectly applied the *prima facie* standard of proof instead of the preponderance of the evidence standard. His argument presumes issues of material fact exist, which are relevant to specific personal jurisdiction for the trial court to resolve. His arguments place the cart before the horse. Before we address the standard of proof, we review the actual issues presented to the trial court. If only questions of law were presented, and no issues of fact needed to be resolved, we need not consider the trial court's findings of fact at all and we simply review the trial court's conclusion of law *de novo. Treadaway v. Payne*, 279 N.C. App. 664, 668, 866 S.E.2d 479, 482 (2021).

Defendant argues his affidavit created an issue of fact the trial court needed to resolve by a preponderance of the evidence, but his affidavit did not deny, contradict, or refute the allegations of Plaintiffs' complaints in any way.

Plaintiffs contend, correctly, "[t]his is a case of specific personal jurisdiction, because the Greenhauses' causes of action arise from Goldstein's contacts with the forum, which contacts he has not denied." *See, e.g.*, *Toshiba Glob. Com. Sols, Inc. v. Smart & Final Stores LLC*, 381 N.C. 692, 693, 873 S.E.2d 542, 545 (2022) (defining specific personal jurisdiction). If there is conflicting evidence before the trial court,

the court would need to make findings of fact before deciding the legal issues. If the facts are not conflicting, the trial court has only a legal issue to decide. Here, the *facts* relevant to specific personal jurisdiction were not challenged or disputed. Taking all of the allegations of Defendant's affidavit as true, and all of Plaintiffs' allegations as true, only a legal question is left to resolve: Do all of these facts support the trial court's legal conclusion of specific personal jurisdiction in North Carolina over Defendant? We hold that they do.

Several cases address the "typical" procedural postures of motions to dismiss for lack of personal jurisdiction, but this case does not fall neatly into the "typical" postures. "The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005). This Court has recognized four procedural postures for a Rule 12(b)(2) motion and explained:

> Three procedural postures are typical: (1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.

*Torres v. City of Raleigh*, 288 N.C. App. 617, 621, 887 S.E.2d 429, 433 (2023) (citation and internal quotation marks omitted).

The Court further explained a fourth posture may exist when the trial court

receives "dueling affidavits." *Id.* at 621, 800 S.E.2d at 432. In that *scenario*, "the trial court may elect to determine the matter based upon evidence presented during an evidentiary hearing[.]" *Id.*

> "[I]f the parties submit dueling affidavits, the court may hear the matter on affidavits presented by the respective parties, or the court may direct that the matter be heard wholly or partly on oral testimony or depositions. If the trial court chooses to decide the motion based on affidavits, the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror. Further, where parties submit depositions to the trial court, and the court's findings are replete with facts taken from these depositions, after holding a hearing on the question of personal jurisdiction where parties argue facts based on the depositions, such a case has moved beyond the procedural standpoint of competing affidavits to an evidentiary hearing. In such circumstances, the trial court must act as a fact-finder, and decide the question of personal jurisdiction by a preponderance of the evidence, because a plaintiff then has the ultimate burden of proving jurisdiction rather than the initial burden of establishing prima facie that jurisdiction was proper."

*Id.* (quoting *Parker v. Town of Erwin*, 243 N.C. App. 84, 97, 776 S.E.2d 710, 721-22 (2015)).

Defendant and our dissenting colleague argue once the Greenhauses offered live testimony, their burden to prove personal jurisdiction became the more stringent preponderance of the evidence standard instead of the *prima facie* evidence standard. *See id.* Defendant and our dissenting colleague place this case in the fourth type of situation, with disputes of fact to be resolved, whether those allegations of fact are presented by affidavits, depositions, or testimony in court. We disagree. Defendant's

submission of an affidavit does not mean there were "dueling affidavits" or the existence of material conflicts in testimony or evidence. Defendant's affidavit did not "duel" with anything and did not deny, challenge, nor conflict with Plaintiffs' allegations or testimony. His affidavit did not create any factual issue for the trial court to resolve.

## A. *Deer Corp. v. Carter*

Defendant relies upon this Court's decision in *Deer Corp. v. Carter*, 177 N.C. App. 314, 316, 629 S.E.2d 159, 162 (2006). In *Deer Corp.*, both parties had submitted competing affidavits. Both parties also submitted depositions to the trial court, and its findings were replete with facts taken from the depositions. The court held a hearing on the question of personal jurisdiction in which no live testimony was offered, but both parties argued facts based upon the depositions. *Id.* at 322, 629 S.E.2d at 166. This Court concluded the "case had moved beyond the procedural standpoint of competing affidavits to an evidentiary hearing. As such, the trial court was required to act as a fact-finder and decide the question of personal jurisdiction by a preponderance of the evidence. Plaintiff therefore had the ultimate burden of proving jurisdiction rather than the initial burden of establishing prima facie that jurisdiction [was] proper." *Id.* (citation and quotation marks omitted).

The Greenhauses argue *Deer Corp.* is not controlling precedent, because the court did not have "dueling" or "competing" affidavits to consider, which did not move the case into the fourth procedural posture. *See Torres*, 288 N.C. App. at 621, 887

- 8 -

S.E.2d at 433. The Greenhauses assert the case remained in the first procedural posture where "the defendant makes a motion to dismiss without submitting any opposing evidence," and the *prima facie* standard was appropriate. *Id.* Although Defendant submitted an affidavit, his affidavit did not dispute any of Plaintiffs' allegations.

The Greenhauses rely upon Mr. Goldstein's affidavit not challenging or denying any of their allegations. His affidavit only averred he is a citizen and resident of Texas, has never visited North Carolina, does not conduct business, participate in the market, or entered into contractual relationships "centered" in North Carolina. The Greenhauses did not allege, dispute, or testify that Mr. Goldstein had done any of those things. In fact, the allegations of both the Greenhauses and Mr. Goldstein can all be true since Mr. Goldstein's affidavit did not address the Greenhauses' allegations at all. They allege he has sent harassing and often obscene and pornographic communications to them and their family, friends, employers and associates in North Carolina, and he maliciously ordered food to be delivered to their home, with payment due upon delivery. His affidavit did not address or deny any of these allegations.

A closer analysis of the relevant cases reveals the need for the trial court to make findings of fact based on a preponderance of the evidence is only triggered by a material conflict in the facts alleged by the opposing parties. In addition, cases addressing specific personal jurisdiction and general personal jurisdiction present

different questions. See *Bauer v. Douglas Aquatics, Inc.,* 207 N.C. App. 65, 71, 698 S.E.2d 757, 763 (2010) ("Two forms of personal jurisdiction have been recognized by the United States Supreme Court: "specific jurisdiction,' where the controversy arises out of the defendant's contacts with the forum state, and 'general jurisdiction,' where the controversy is unrelated to the defendant's activities within the forum, but there are 'sufficient contacts" between the forum and the defendant." (citation omitted))

In this case, the issue is specific personal jurisdiction because Plaintiffs' claims arise out of Defendant's "alleged contacts with North Carolina." *Id*. at 72, 698 S.E.2d at 763. We must "limit our review to a determination of whether specific jurisdiction exists." *Id.* (citing *Wells Fargo Bank, N.A. v. Affiliated FM Ins. Co.*, 193 N.C. App. 35, 45, 666 S.E.2d 774, 780 (2008) ("Because plaintiff's contentions regarding [Appellant's] minimum contacts relate to the events giving rise to this cause of action, we need not address whether general jurisdiction exists.")).

## B. *Cameron-Brown Co., Parker* and *Bruggeman*

In *Cameron-Brown Co. v. Daves*, a case relied upon by the Court in both *Parker* and *Torres*, this Court stated the need for findings of fact was triggered by the fact "the parties presented affidavits which *materially conflicted." Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285, 350 S.E.2d 111, 114 (1986) (emphasis supplied). In *Parker*, this Court noted "where 'unverified allegations in the complaint meet plaintiff's initial burden of proving the existence of jurisdiction . . . *and defendant[s] . . . d[o] not contradict plaintiff's allegations*[ ], such allegations are accepted as true

and deemed controlling.'" *Parker*, 243 N.C. App. at 97, 776 S.E.2d at 721 (quoting *Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 101, 545 S.E.2d 243, 246-47 (2001)) (emphasis supplied).

In *Bruggeman v. Meditrust Acquisition Co.*, the defendant had submitted an affidavit that "contradicts almost every material allegation in plaintiffs' complaint," and this Court noted, "where . . . [the] defendants submit some form of evidence *to counter* plaintiffs' allegations, those allegations can no longer be taken as true or controlling and plaintiffs cannot rest on the allegations of the complaint." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615-16, 532 S.E.2d 215, 218 (2000). *See also ITG Brands, LLC v. Funders Link, LLC*, 284 N.C. App. 322, 326, 876 S.E.2d 304, 308 (2022) (parties submitted "dueling affidavits").

In all the cases cited regarding how the trial court should determine this issue, the pleadings or evidence of facts relevant to specific personal jurisdiction, whether by affidavit or otherwise, was conflicting. In all these cases, the substantive claims would be resolved based on entirely different facts than the facts regarding personal jurisdiction.

In *Deer Corp.*, the substantive claims arose out of business relationships; the claims included breach of contract, misappropriation of trade secrets, tortious interference with contract and prospective economic advantage, civil conspiracy, punitive damages, and unfair and deceptive trade practices. *Deer Corp.* 177 N.C. App. at 316, 629 S.E.2d at 162. The trial court's findings regarding the defendants'

contacts with North Carolina would not directly affect the ultimate determination of liability of the defendants. The same is true in cases dealing with governmental or sovereign immunity, such as *Torres* and *Parker*. The trial court's findings regarding immunity would have no effect on the facts relevant to the plaintiff's negligent injury claims in those cases. These initial rulings addressed the legal issue of personal jurisdiction and this question of law must be decided by the judge, not the finder of fact.

In all the cases cited above, the finder of fact on the substantive claims would be a jury, if a jury trial was requested by a party. If the judge determined there was personal jurisdiction over the claims, and the judge may need to find some facts relevant to personal jurisdiction to make this legal determination, then the trier of fact, normally a jury, would reconcile the dispute and decide the substantive facts relevant to the defendant's liability for the claim. The jurisdictional facts found by the judge would not predetermine the substantive liability issue if the judge decided not to dismiss for lack of personal jurisdiction.

Here, the jurisdictional facts and the facts supporting liability on the substantive claim are essentially the same, which is likely why Defendant's affidavit simply failed to address Plaintiffs' allegations at all. Instead, his affidavit solely addressed facts relevant to general personal jurisdiction, not specific personal jurisdiction. As a practical matter, if the trial court had made findings Defendant did in fact send the communications and engage in the actions as alleged by Plaintiffs, it

would have already decided the facts required to support granting Plaintiffs' requests for entry of a DVPO and CNCO. Defendant's affidavit simply stated he had not done certain things in North Carolina that Plaintiffs' allegations never claimed he had or had not done; and, Defendant did not deny he had committed the acts and done the things Plaintiffs alleged. The trial court could consider all the allegations of Plaintiffs and those of Defendant to be true because they are not conflicting, and the result would be the same.

Defendant's motion to dismiss for lack of personal jurisdiction was properly denied, and the trial court need not make any findings of fact that should be determined in the trial of the substantive issues. For these reasons, we agree with the Greenhauses. By presenting an affidavit that did not deny or even respond to the Greenhauses' allegations in any way, Defendant did not present any "opposing evidence" and the case remained under the first procedural posture where a *prima facie* standard was appropriate. *See Torres*, 288 N.C. App. at 621, 887 S.E.2d at 433. (explaining a preponderance of the evidence standard is only required once a case moves into the fourth procedural posture). This argument is overruled.

## VI. Findings of Fact

Mr. Goldstein argues this Court should disregard the following findings of fact, because they are either recitations of the testimony or conclusions of law rather than proper findings of fact. *See In re A.C.*, 378 N.C. 377, 383-84, 861 S.E.2d 858, 867 (2021) ("According to well-established North Carolina law, [r]ecitations of the

testimony of each witness *do not* constitute findings of fact by the trial judge.") (citation and quotation marks omitted) (emphasis in original). We need not address the trial court's findings of fact based upon our resolution of the first issue. There were no issues of fact relevant to specific personal jurisdiction and our review is limited to *de novo* review of the trial court's legal conclusion, which was correct.

## VII.   Personal Jurisdiction

Mr. Goldstein argues the trial court lacked personal jurisdiction over him because the record before the trial court does not show he was "soliciting" in North Carolina to meet the requirements of the long-arm statute, or that he had established minimum contact within our State. N.C. Gen. Stat. § 1-75.4(4)(a)(2025). We disagree.

Whether the court has personal jurisdiction over an out-of-state defendant is a two-step inquiry. *Carson v. Brodin*, 160 N.C. App. 366, 369, 585 S.E.2d 491, 494 (2003). The court first inquires whether the long-arm statute authorizes it to assert jurisdiction over the foreign party. *Id.* If so, the court next considers whether doing so would be consistent with the constitutional requirements of due process. *Id.*

## A. Preservation of Error

The Greenhauses argue Mr. Goldstein failed to preserve his argument related to the long-arm jurisdiction statute for our review. They contend Mr. Goldstein moved to dismiss for lack of personal jurisdiction on a minimum contacts theory only and did not raise the long-arm statute before the trial court.

Mr. Goldstein's Rule 12(b)(2) motion alleges:

> Defendant is a citizen and resident of the State of Texas and does not satisfy the constitutional requirements necessary for North Carolina to exercise personal jurisdiction over the Defendant. Defendant does not have minimum contacts with the State of North Carolina.

While Mr. Goldstein's motion does not specifically address the long-arm statute, the trial court specifically concluded personal specific jurisdiction is authorized under N.C. Gen. Stat. § 1-75.4(4)(a) (2025), our long-arm jurisdiction statute.

In support of their position, the Greenhauses cite *Mucha v. Wagner*, 378 N.C. 167, 861 S.E.2d 501(2021). In that case, the defendant based his personal jurisdiction challenge in the trial court solely on lack of minimum contacts. Our Supreme Court held he had "failed to preserve his challenge to the trial court's jurisdiction as exceeding the scope of North Carolina's long-arm jurisdiction statute, N.C. Gen. Stat. § 1-75.4, which he attempted to raise for the first time on appeal." *Id.* at 169 n. 2, 861 S.E.2d at 505 n. 2. The Court "assume[d] for the purposes of resolving th[e] case that the trial court's exercise of personal jurisdiction was authorized by the long-arm statute." *Id.*

In *Mucha,* the trial court did not make any ruling on the long-arm statute. Here, the trial court specifically addressed and ruled upon the issue. Mr. Goldstein's motion, which challenges personal jurisdiction in general terms, coupled with the trial court's specific ruling on the long-arm statute, are sufficient to preserve this

issue for our review.  The Greenhauses' argument is overruled.

## B. Long-Arm Statute

Mr. Goldstein argues the trial court erred by concluding the long-arm statute confers personal jurisdiction over him.  We disagree.

In both orders, the trial court concluded: "Personal specific jurisdiction is authorized in this matter under [N.C.] Gen. Stat. § 1-75.4(4)(a) given the Plaintiff's contentions [asserting] Defendant's activities in North Carolina have been continuous and systematic and directly related to Plaintiff's cause of action."  The trial court relied on the portion of our "long-arm jurisdiction statute," which authorizes personal jurisdiction over a person as follows:

> (4) Local Injury; Foreign Act. — In any . . . action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:
>
> a. *Solicitation* or services activities were carried on within this State by or on behalf of the defendant[.]

N.C. Gen. Stat. § 1-75.4 (a)(4) (2025) (emphasis supplied).  A "solicitation" is statutorily defined as "a request or appeal *of any kind*, direct or indirect, by oral, written, visual, electronic, or other communication, whether or not the communication originates from outside the State."  N.C. Gen. Stat. § 1-75.2 (2025) (emphasis supplied).

Mr. Goldstein specifically contends the record before the trial court failed to

show he had made any "solicitation" within North Carolina. Our Court has held emails and telephone calls to be "solicitations" under the long-arm statute when the sender attempts to entice, convince, or cause the receiver to take some action. In *Cooper v. Shealy*, 140 N.C. App. 729, 731, 537 S.E.2d 854, 856 (2000), a wife in North Carolina brought an action for criminal conversation and alienation of affection against her husband's South Carolina based girlfriend.

The wife in *Cooper* alleged the girlfriend had contacted her husband by email and telephone to solicit the husband's affections, thereby harming the wife and her marriage. *Id.* This Court held the emails and telephone calls "to solicit [the husband's] affections and entice him to leave his family" constituted "solicitation" under the long-arm statute. *Id.*

Mr. Goldstein's communications were also alleged to be of a solicitous nature, because they were designed to cause another person to take some action. Both Mr. and Mrs. Greenhaus alleged Mr. Goldstein had contacted individuals at their places of employment in North Carolina with baseless accusations "to get [him] fired." Mr. Greenhaus also alleges the "sales calls he signs me up for" cause salespeople in North Carolina to constantly call his home and his place of employment. He further alleges Mr. Goldstein solicited North Carolina restaurants to deliver him food on a "cash on delivery" basis.

The communications alleged in the complaints include instances of Mr. Goldstein "requesting" from or "appealing" to another person to take some action.

N.C. Gen. Stat. § 1-75.2 (2025). These communications constitute "solicitations" under the long-arm statute. N.C. Gen. Stat. § 1-75.4 (a)(4) (2025); *Cooper*, 140 N.C. App. at 731, 537 S.E.2d at 856. The trial court properly concluded the long-arm statue authorizes personal jurisdiction over Mr. Goldstein. N.C. Gen. Stat. § 1-75.4 (a)(4) (2025).

### C. Minimum Contacts

Mr. Goldstein also argues the trial court's proper findings of fact do not support the conclusion he had sufficient contacts within the State to allow North Carolina to exercise jurisdiction over him. Although we disregard the findings of fact, as explained above, we disagree.

Once it is determined the long-arm statute authorizes jurisdiction over an out-of-state party, "[d]ue process requires that the defendant have 'minimum contacts' with the state in order to satisfy 'traditional notions of fair play and substantial justice.'" *Cooper,* 140 N.C. App. at 734, 537 S.E.2d at 857 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945)).

"The factors to consider when determining whether defendant's activities are sufficient to establish minimum contacts are: '(1) the quantity of the contacts; (2) the quality and nature of the contacts; (3) the source and connection of the cause of action to the contacts; (4) the interests of the forum state, and[,] (5) the convenience to the parties.'" *Id.* (quoting *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 114, 516 S.E.2d 647, 650 (1999)).

The Greenhauses allege the contacts Mr. Goldstein made to them and others within the State of North Carolina were solicitous, repetitive, extensive, and overwhelming. According to the Greenhauses, Mr. Goldstein made contacts to someone in North Carolina nearly 3,000 times concerning them, and nearly all of the communications were harassing, pornographic, humiliating, or fundamentally disturbing. The Greenhauses' cause of action is based solely upon these extensive contacts. Defendant did not deny any of these allegations.

"North Carolina has a strong interest in protecting its citizens from local injury caused by the tortious conduct of a foreign citizen." *Cooper*, 140 N.C. App. at 735, 537 S.E.2d at 858. Although Mr. Goldstein may be more inconvenienced by having to defend the alleged conduct in North Carolina, as opposed to his home state, we find this factor to be heavily outweighed by the other four factors. *Id.* Allowing the Greenhauses to bring these claims against Mr. Goldstein in North Carolina does not "offend[] traditional notions of fair play and substantial justice." *Id.* This argument is overruled.

## VIII. Conclusion

The trial court properly denied Mr. Goldstein's motions to dismiss under Rule 12(b)(2). The trial court's orders authorizing the exercise of personal jurisdiction over Mr. Goldstein are affirmed. *It is so ordered.*

AFFIRMED.

Judge STROUD Concurs

Judge CARPENTER Dissents, by separates  opinion.

CARPENTER, Judge, dissenting.

In my view, the trial court erred by applying the prima facie standard of proof after an evidentiary hearing on Defendant's Rule 12(b)(2) motion to dismiss. Upon receiving evidence from both parties and a request for written findings, the trial court needed to decide the question of personal jurisdiction by a preponderance of the evidence as the finder of fact in the evidentiary hearing. Because the trial court's misapprehension of law held Plaintiffs to a less-exacting standard of proof than was required at this stage of proceedings, I would reverse and remand for a new evidentiary hearing on personal jurisdiction. I therefore respectfully dissent.

## I.    Background

Plaintiffs allege their family has been the target of a campaign of obsessive and harassing conduct and communications by Defendant—a resident of Texas and one-time boyfriend of Mrs. Greenhaus decades ago. Litigation between Plaintiffs and Defendant commenced on 3 September 2024 when Mr. Greenhaus filed a verified complaint for a Chapter 50C civil no contact order. The next day, Mrs. Greenhaus filed an unverified complaint for a Chapter 50B domestic violence protective order. Plaintiffs prepared their complaints using Administrative Office of the Courts forms, which did not include pre-printed language or a checkbox alleging the existence of personal jurisdiction over nonresidents. Neither complaint explicitly alleged the existence of personal jurisdiction over Defendant.

Defendant moved to dismiss pursuant to Rule 12(b)(2) of the North Carolina

Rules of Civil Procedure. Following an evidentiary hearing, where it received an affidavit from Defendant, live testimony and exhibits from Plaintiffs, and argument from both parties, the trial court made written findings at Defendant's request.[1] Based on its findings and recitations, the trial court reasoned it was "not necessary to determine at this stage whether a showing [wa]s made or could be made that Defendant, or his agents," sent harassing communications to Plaintiffs in North Carolina. As a result, the trial court held that "Plaintiff ha[d] met the initial burden of establishing prima facie that jurisdiction is proper in North Carolina . . . ." On this basis, the trial court denied Defendant's motion to dismiss, and Defendant appealed.

## II. Discussion

### A. Dispositive Issue

The parties agree that the trial court conducted an evidentiary hearing on the issue of personal jurisdiction. In my view, the dispositive issue is whether the trial court applied the appropriate standard of proof following the evidentiary hearing. After a thorough review of binding precedent, I would hold it did not. *See Schaeffer v. SingleCare Holdings, LLC*, 384 N.C. 102, 106, 884 S.E.2d 698, 703–04 (2023) (" 'When the parties have submitted affidavits and other documentary evidence, a trial court reviewing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) must determine whether the plaintiff has established that jurisdiction exists

---

[1] Mr. Bishop revealed this fact during oral argument on 16 February 2026.

by a preponderance of the evidence.' ") (quoting *State ex rel. Stein v. E.I. du Pont de Nemours & Co.*, 382 N.C. 549, 555, 879 S.E.2d 537, 542 (2022)).

**B. Standard of Review**

"When this Court reviews a decision as to personal jurisdiction, it considers only 'whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court.' " *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005) (quoting *Replacements, Ltd. v. MidweSterling,* 133 N.C. App. 139, 140–41, 515 S.E.2d 46, 48 (1999)). But " 'when the pertinent inquiry on appeal is based on a question of law[,] . . . we conduct de novo review.' " *Toshiba Glob. Com. Sols., Inc. v. Smart & Final Stores LLC*, 381 N.C. 692, 699, 873 S.E.2d 542, 548 (2022) (stating that the Court would affirm the trial court's personal jurisdiction ruling regardless of whether it reviewed for competent evidence or de novo) (quoting *Da Silva v. WakeMed*, 375 N.C. 1, 5, 846 S.E.2d 634, 638 (2020)).

Whether the trial court applied the proper standard of proof on a Rule 12(b)(2) motion to dismiss is a question of law we review de novo. *See id.* at 699, 873 S.E.2d at 548.

**C. Rule 12(b)(2) Motions**

The North Carolina Rules of Civil Procedure apply in Chapter 50B and Chapter 50C actions, like all other civil actions filed in our General Courts of Justice, except as provided by statute. *See* N.C. Gen. Stat. § 1A-1, Rule 1 (2025). Parties are

entitled to due process while challenging personal jurisdiction during *in personam* actions, like domestic violence proceedings. *See Mannise v. Harrell*, 249 N.C. App. 322, 332, 791 S.E.2d 653, 660 (2016); *Mucha v. Wagner*, 378 N.C. 167, 169–70, 861 S.E.2d 501, 505 (2021).

If a defendant challenges the trial court's personal jurisdiction, the plaintiff bears "the initial burden of establishing prima facie that jurisdiction is proper." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 217 (2000). The applicable standard of review for a trial court on " 'a motion under Rule 12(b)(2) depends upon the procedural context confronting the court.' " *Torres v. City of Raleigh*, 288 N.C. App. 617, 620, 887 S.E.2d 429, 433 (2023) (quoting *Banc of Am. Sec. LLC*, 169 N.C. App. at 693, 611 S.E.2d at 182). Typically, a trial court encounters three procedural postures: " '(1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.' " *Providence Volunteer Fire Dep't v. Town of Weddington*, 253 N.C. App. 126, 134, 800 S.E.2d 425, 432 (2017) (quoting *Banc of Am. Sec. LLC*, 169 N.C. App. at 693, 611 S.E.2d at 182).

In the first posture, the trial court "must decide whether the complaint contains allegations that, if taken as true, set forth a sufficient basis for the court's exercise of personal jurisdiction." *Banc of Am. Sec. LLC*, 169 N.C. App. at 693, 611

S.E.2d at 182. In the second posture, because the defendant supports its motion to dismiss with evidence, like an affidavit, "the complaint's allegations can no longer be taken as true or controlling and the plaintiff cannot rest on the allegations of the complaint." *Providence*, 253 N.C. App. at 134, 800 S.E.2d at 432 (cleaned up). "[T]o determine whether there is evidence to support an exercise of personal jurisdiction, the court then considers (1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence)." *Banc of Am. Sec. LLC,* 169 N.C. App. at 693–94, 611 S.E.2d at 182–83. On the first two postures, the trial court determines whether the plaintiff carried its initial burden to show prima facie that jurisdiction is proper. *See Bruggeman*, 138 N.C. App. at 615, 532 S.E.2d at 217.

In the third posture, adversarial parties *each* submit "affidavits or an affidavit and a verified complaint" addressing personal jurisdiction. *Providence*, 253 N.C. App. at 135, 800 S.E.2d at 432. We often describe these as "competing," *id.* at 135, 800 S.E.2d at 432, or "dueling," *Torres*, 288 N.C. App. at 621, 887 S.E.2d at 433. In this circumstance, " 'the court may hear the matter on affidavits presented by the respective parties, . . . [or] the court may direct that the matter be heard wholly or partly on oral testimony or depositions.' " *Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (quoting N.C.R. Civ. P. 43(e)). "If the trial court chooses to decide the motion based on affidavits, 'the trial judge must determine the weight and sufficiency of the evidence [presented in the affidavits] much as a juror.' " *Id.* at 694,

5

611 S.E.2d at 183 (quoting *Fungaroli v. Fungaroli,* 51 N.C. App. 363, 367, 276 S.E.2d 521, 524, *disc. review denied*, 303 N.C. 314, 281 S.E.2d 651 (1981)).

In *Torres*, we recognized a fourth posture. 288 N.C. App. at 621, 887 S.E.2d at 433. Practically speaking, we subdivided the third posture to more clearly delineate the trial court's responsibilities based on the nature and extent of evidence before it. *See id.* at 621, 887 S.E.2d at 433. The clearest indicator of the transition to the fourth posture is an evidentiary hearing, where the parties present live testimony, documentary evidence, or arguments based on limited jurisdictional discovery, such as depositions. *See id.* at 622, 887 S.E.2d at 434; *Deer Corp. v. Carter*, 177 N.C. App. 314, 322, 629 S.E.2d 159, 166 (2006); *Parker v. Town of Erwin*, 243 N.C. App. 84, 99, 776 S.E.2d 710, 722 (2015). Simply put, if the trial court receives evidence *beyond* affidavits addressing the issue of personal jurisdiction, it must " 'act as a fact-finder, and decide the question of personal jurisdiction by a preponderance of the evidence,' with Plaintiff bearing 'the ultimate burden of proving jurisdiction rather than the initial burden of establishing *prima facie* that jurisdiction was proper.' " *Torres*, 288 N.C. App. at 622, 887 S.E.2d at 434 (quoting *Parker*, 243 N.C. App. at 97, 776 S.E.2d at 721–22).

In this case, it is difficult to reconcile our precedent with the majority's conclusion that this case remained in the first posture because Defendant did not present any "opposing evidence." The majority reads "opposing" to mean materially conflicting, which in my view, misinterprets the rule defining the first posture.

6

*Compare Banc of Am. Sec. LLC*, 169 N.C. App. at 693, 611 S.E.2d at 182 ("Typically, the parties will present personal jurisdiction issues in one of three procedural postures: *(1)* the defendant makes a motion to dismiss without submitting any *opposing evidence*[,]"), *with id.* at 693, 611 S.E.2d at 182 ("In the *first* category of motions, when neither party submits *evidence* . . . .") (emphases added).

It is similarly challenging to rationalize the majority's approach to the trial court's findings of fact. "Absent a request by one of the parties, the trial court is not required to make findings of fact when ruling on a motion." *Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285, 350 S.E.2d 111, 114 (1986) (affirming the grant of a defendant's Rule 12(b)(2) motion to dismiss despite "materially conflict[ing]" affidavits). Unlike *Cameron-Brown,* where we examined the trial court's *presumed* findings, Defendant requested and the trial court made written findings under the incorrect standard of proof. *See id.* at 285–88, 350 S.E.2d at 114–15. If it was true that prima facie was the proper standard of proof at this posture, why would findings reciting unrebutted testimony and allegations from the pleadings be impermissible?

Furthermore, I cannot fully agree that Defendant's affidavit was devoid of information implicating specific personal jurisdiction.[2] For example, placing food orders and filing licensure complaints could be reasonably construed as market participation. By choosing to hold an evidentiary hearing on personal jurisdiction,

---

[2] Defendant's concise affidavit highlighted his lack of contacts with North Carolina. The affidavit did not allege inconsequential facts, such as "the sky is blue," for example.

the trial court presumably viewed Defendant's evidence and the verified complaint as competing affidavits. Though I agree this is a specific personal jurisdiction case, influencing which facts are relevant to the analysis, I do not believe our personal jurisdiction caselaw permits a trial court to apply the prima facie standard of proof to a Rule 12(b)(2) motion to dismiss after an evidentiary hearing.

Based on my reading of precedent, the trial court's decision to conduct an evidentiary hearing, where it received documentary evidence and testimony from Plaintiffs, transitioned this matter to the fourth posture. *See Torres*, 288 N.C. App. at 621, 887 S.E.2d at 433. As a result, the trial court was required to "act as a fact-finder, and decide the question of personal jurisdiction by a preponderance of the evidence, with Plaintiff bearing the ultimate burden of proving jurisdiction rather than the initial burden of establishing *prima facie* that jurisdiction was proper." *See id*. at 622, 887 S.E.2d at 434. Notably in *Torres*, we rejected an argument like the one advanced by Plaintiffs and accepted by the majority here. *See id*. at 622, 887 S.E.2d at 434 (The "[d]efendants contend that the evidence contained in [p]laintiff's affidavits did not dispute the evidence pertaining to personal jurisdiction found in [d]efendants' affidavits, and, therefore, this case should be considered from the second typical posture. *However*, this case is more appropriately considered from the fourth posture . . . .") (emphasis added).

Contrary to the trial court's ruling, after conducting an evidentiary hearing, it *was* necessary to determine the existence of personal jurisdiction by a preponderance

of the evidence—namely, whether a showing was made that Defendant, or his agents, more likely than not sent harassing communications or directed harassing conduct towards Plaintiffs in North Carolina. Moreover, the trial court should have found facts necessary to support its conclusion, *see id.* at 622, 887 S.E.2d at 434, instead of reciting allegations and testimony, *see Scheinert v. Scheinert*, 260 N.C. App. 234, 236, 818 S.E.2d 114, 115 (2018) (" 'As indicated by the word 'alleged,' the findings are not the 'ultimate facts' required by Rule 52(a) to support the trial court's conclusions of law, but rather are mere recitations of allegations.' ") (quoting *In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002)).

I am concerned the majority's approach tends to upend settled principles of civil procedure. Distinguishing precedent is no substitute for applying it. I read our caselaw to indicate the four postures operate as a one-way street, based on the nature and extent of evidence before the trial court. Once the elements are present to move a case from the first to the second posture, the second to third posture, or from the third to the fourth posture, it seems illogical and contrary to precedent to permit the case to revert to the first posture. My colleagues appear to ground their analysis on a procedural methodology the trial court could have used, while sidestepping the procedural methodology the trial court applied. It is undisputed that the trial court conducted an evidentiary hearing on the issue of personal jurisdiction and applied a prima facie standard of proof in its order. Throughout my legal research, I found no precedent tending to allow a prima facie determination as to personal jurisdiction

9

after an evidentiary hearing on the issue. Our precedent appears to be clear, consistent, and abundant to the contrary, including cases that applied the preponderance standard to something less than an evidentiary hearing.

If the cold record was better developed, my vote would likely be to remand for additional findings of fact under the proper standard of proof, with the taking of new or additional evidence at the trial court's discretion. In the instant case, however, Defendant "was unable to obtain a transcript of the 27 September 2024 evidentiary hearing" as the Clerk of Court could not locate the recording. For this reason, I would instruct the trial court to hold a new evidentiary hearing on the record.

The result might not change if the trial court applied the proper standard of proof on remand. In a common law system, however, where our reasoning carries the potential to influence untold future cases across the state, objective adherence to precedent must take priority over a preferable result. Because the trial court's error held Plaintiffs to a less-exacting standard of proof than was required at this posture, I would reverse and remand for a new evidentiary hearing on personal jurisdiction. Therefore, I respectfully dissent.